Willie Ed GORDON, Plaintiff,

v.

HARTFORD ACCIDENT AND INDEMNITY COMPANY, Defendant.

No. C–C–83–0172–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Oct. 13, 1983.

James E. Ferguson, II, Chambers, Ferguson, Watt, Wallas, Adkins & Fuller, P.A., Charlotte, N.C., for plaintiff.

James P. Crews, David N. Allen, Golding, Crews, Meekens, Gordon & Gray, Charlotte, N.C., for defendant.

## ORDER

POTTER, District Judge.

THIS MATTER is before the Court on Motions of the Plaintiff and the Defendant for summary judgment. Fed.R.Civ.P. 56 states that the Court may grant summary judgment if there is not a genuine issue as to any material fact and a party is entitled to a judgment as a matter of law. Having applied this standard to the record, the stipulations and the insurance policy attached to the Defendant's Motion, the Court concludes that there is not a genuine issue of any material fact and the Defendant is entitled to summary judgment as a matter of law.

The facts undisputed by the parties reveal that on November 16, 1973, while acting within the scope of his employment M.T. Rogers, then the Chief of the Pineville Police Department, shot the Plaintiff, Willie Ed Gordon, with a firearm. Rogers intentionally shot the Plaintiff causing the Plaintiff to be permanently paralyzed from the waist down.

As a result of the shooting incident, the Plaintiff instituted suit against Rogers and the Town of Pineville (Pineville) under 42 U.S.C. § 1983. In the final trial of this action, after two previous trials, Pineville was dismissed as a party defendant. The Plaintiff did not appeal the dismissal. As to the Defendant Rogers, the jury rendered a verdict in favor of the Plaintiff for $29,500.00. By judgment filed September 15, 1982 this Court entered a judgment in favor of the Plaintiff and against Rogers for $29,500.00 with interest at 6% per annum until paid and further ordered Rogers to pay $30,000.00 in attorneys fees.

The Plaintiff attempted to collect the judgment from the Defendant in this action, Hartford Accident and Indemnity Company (Hartford). Hartford denied coverage under the terms of the policy of insurance number 22SMP505618 (the poli-cy). The Plaintiff thereafter brought the instant litigation against Hartford for payment of the Judgment filed September 15, 1982.

The policy, attached to the Plaintiff's Complaint as Exhibit A, was in full force and effect when the Plaintiff was injured. The policy was issued to the Town of Pineville as the "named insured". It additionally included as "persons insured ... any executive officer, member of the board of trustees, directors or governors or stockholders (of the Town of Pineville) while acting within the scope of his duties as such." The insurance coverage extended to any legal obligation to pay damages caused by an "occurrence". An "occurrence" is defined in the policy as "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

The Plaintiff contends the policy covers the September 15, 1982 Judgment because Rogers was "an executive officer" of the Town of Pineville acting within the scope of his duties on November 16, 1973. Furthermore, the intentional shooting of the Plaintiff was an "occurrence" within the terms of the policy because the shooting was not intended by the named insured, the Town of Pineville.

Conversely, the Defendant contends Rogers was not an insured person under the policy because he was not acting within the scope of the duties of an executive officer at the time he shot the Plaintiff. If, however, Rogers was covered by the policy, the Defendant contends that the shooting is not an occurrence within the policy definitions because the shooting was intended by Rogers, an insured under the policy.

The parties' contentions present the Court with two contractual issues. The first issue is whether Rogers is an insured within the ambit of the policy. If the first issue is answered affirmatively, then the Court must determine whether an intentional shooting can be an "occurrence" within the meaning of the policy. The

Court will consider each question separately.

# I. DISCUSSION

## A. *Introduction*

■ At the onset it is necessary to note that the issues involved in this litigation are purely contractual and have no bearing on the Town of Pineville's lack of liability in the previous litigation under 42 U.S.C. § 1983. This litigation involves an insurance policy purchased by the Town of Pineville from the Defendant. An insurance policy is a contract by the parties and the Court is under a duty to enforce it in accordance with its terms. *Commercial Union Ins. Co. v. Mauldin,* 62 N.C.App. 461, 303 S.E.2d 214 (1983). Any interpretation by this Court as to the meaning of the contract in no way infers, implies or imposes any liability on the Town of Pineville.

## B. *Rogers Was a "Person Insured" Under the Policy At the Time He Shot the Plaintiff*

The policy was issued to Pineville as the named insured and provided coverage for "any executive officer, member of the Board of Trustees, directors or governors, or stockholder" of the Town of Pineville "while acting within the scope of his duties as such." The Defendant admits that "the Chief of the Police Department might be considered to be an executive officer in some instances, and that if he were sued for personal injuries caused by him while in the performance of executive duties, there might be coverage for him under the policy". The Defendant, however, contends that when Rogers shot the Plaintiff he was merely acting as a policeman and not as the Chief of Police. Therefore, since Rogers was merely acting as a policeman he is not an insured under the policy.

■ The Defendant's argument is defeated by its own admission. The Defendant stipulated that on the day in question Rogers was the Chief of Police Department and was acting within the scope of his employment with Pineville when he shot the Plaintiff. There is not any evidence presented that Rogers served sometimes as the Chief of the Police and sometimes as a policeman.

Therefore, based on the Defendant's own stipulations, the Court is of the opinion that Rogers was acting within the scope of his employment as Chief of Police when he shot the Plaintiff and as such, he is a "person insured" under the policy.

## C. *The Shooting of the Plaintiff Was an "Occurrence" Within the Meaning of the Policy*

The parties have stipulated that Rogers intentionally shot the Plaintiff. The policy provides coverage for an "occurrence" which is defined as "an accident, ... which results, during the policy period in bodily injury or property damage neither expected *nor intended from a standpoint of the insured."* (emphasis supplied). There are two categories of insureds under the policy, the "named insured" and "persons insured".

The Defendant contends the shooting should be viewed from the standpoint of Rogers, an insured under the policy. Therefore, since he intended his actions there is no coverage under the policy. The Plaintiff argues that "the insured" refers to the named insured, Pineville, who certainly did not intend for the Chief of Police to shoot the Plaintiff. Thus, the issue before the Court is whether the ambiguous phrase "from the standpoint of the insured" refers to the named insured, Pineville, or an additional insured, Rogers. The Court is of the opinion that the named insured is "the insured" referred to in the policy and as such the acts of Rogers were an "occurrence" within the terms of the policy.

There are two principal North Carolina cases which construe the meaning of the word "occurrence" and the effect of an intentional act by an insured. *See, Commercial Union Insurance Co. v. Mauldin,* 62 N.C.App. 461, 303 S.E.2d 214 (1983); *Edwards v. Akion,* 52 N.C.App. 688, 279 S.E.2d 894, 895, *aff'd,* 304 N.C. 585, 284 S.E.2d 518 (1981). Both cases are informa-

tive. *Edwards,* however, is the only opinion dealing with the peculiar issue in this litigation.

The Defendant argues that *Commercial Union Insurance Co. v. Mauldin, supra* is analogous to the present inquiry. Although possibly analogous, the opinion is not helpful in resolving the issue before this Court. In *Commercial Union,* the insurer moved for summary judgment on the grounds that the insured, having murdered the claimant, was precluded from coverage under a homeowner's policy. The homeowner's policy did not cover any injury "which is either expected or intended from the standpoint of the insured." The Court of Appeals accordingly found that the insured's actions were intentional and thereby not covered under the policy.

At an initial blush, *Commercial Union* might seem applicable to the insurance policy in question. A closer analysis, however, reveals otherwise. The factual setting reveals that the insured admitted he intended to shoot his wife but that he accidently killed a companion of hers. Thus, the issue before the Court of Appeals was whether a guilty plea of second degree murder was an admission that the insured had intended the act. The Court finding the insured had the general intent to do the act excluded the act from coverage under the insurance policy. The Court of Appeals was not presented with the issue of deciding which insured was referred to in the clause "from the standpoint of the insured." In fact, there was only one insured mentioned in the opinion.

The issue involved in this litigation is not whether the act was intentional but instead from whose perspective the act should be viewed. Therefore, this Court is of the opinion that *Commercial Union* is not applicable to the policy interpretation involved in this litigation.

In *Edwards v. Akion,* 52 N.C.App. 688, 279 S.E.2d 894, 895 *aff'd,* 304 N.C. 585, 284 S.E.2d 518 (1981) an identical provision in an insurance policy was interpreted to provide coverage in circumstances similar to this litigation. The policy in *Edwards* defined "occurrence" as "an accident ... which results in bodily injury ... neither expected nor intended from the standpoint of the insured." The named insured was the City of Raleigh. Persons insured included any "executive officer" while acting within the scope of his duties. In addition, an endorsement amended the policy "to include any employee of the named insured while acting within the scope of his duties." 52 N.C.App. at 691, 279 S.E.2d 894.

In *Edwards* the Plaintiff conceded that a city employee intentionally assaulted her. Thus, the issue before the Court was whether an intentional assault was an "occurrence" within the meaning of the insurance policy. 52 N.C.App. at 691. The City argued that because the employee was an additional insured under the policy, the event should be viewed from the employee's standpoint, precluding coverage. The Court, disagreeing with the Defendant's contention, held that the acts of the employee were an "occurrence" within the ambit of the policy.

■ *Edwards,* however, involved a *tort* action at common law against *the City of Raleigh.* Under the common law a municipality is not liable for the torts of its employees committed while performing a governmental function. *Edwards v. Akion, supra* at P. 691, 279 S.E.2d 894, and cases cited. Under the provisions of N.C. G.S. § 160A–485(a) a city waives its immunity from civil liability *in tort* by purchasing liability insurance. *"Immunity is waived only to the extent that the city is indemnified by the insurance contract."* *Edwards* at P. 691, 279 S.E.2d 894. Thus, *if* this action had been pursued as an action in tort and a verdict and judgment rendered against the defendant Police Chief and the City of Pineville the insurance company may have been liable under the rationale set out above because under N.C. Statute, Section 160A–485(a) the City of Pineville has waived its immunity by purchasing liability insurance, and the City would be deemed to be insured as the named insured in the policy and under the analysis set out earlier in this opinion the

intentional shooting by the police chief of the Plaintiff could be construed as an "occurrence" when viewed from the perspective of the City of Pineville, the named insured. The only question in *Edwards* was whether Raleigh would be indemnified by the insurance contract and therefore had waived its immunity under the Statute, i.e., if the City of Raleigh was covered by insurance then the city was liable in damages for the tortious acts of its employees within the scope of their employment. In *Edwards* the city was insured and therefore liable. "Even when an insurance policy expressly excludes coverage for intentional injury there exists a significant split of opinion as to whether an assault will be covered. Where there is no specific exclusion clause but instead the language is similar to that used in the policy here in question, the courts are even more inclined in favor of coverage." *Edwards* at P. 692, 279 S.E.2d 894.

In the case at bar, however, the question is not whether the city is liable because it is indemnified by insurance. That question is irrelevant in actions brought under Title 42 Section 1983.

■ The doctrine of *respondeat superior*, does not apply in actions under Title 42, Section 1983, regardless of whether there is insurance.

"The language of Section 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a *constitutional tort* (emphasis added). In particular, we conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under Section 1983 in a *respondeat superior* theory." *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978).

■ In the trial of the Plaintiff's action against the City of Pineville and the Police Chief, this Court held that the Police Chief's actions were not pursuant to the official policy of Pineville and therefore Pineville could not be held liable under the facts of this case for a constitutional tort by the Police Chief and the Court dismissed Pineville as a party defendant. The jury, however, rendered a verdict against the Police Chief and judgment was entered for the Plaintiff against the Police Chief. There was not any appeal from the Court's dismissal of Pineville as a party defendant.

In *Edwards* the *City* argued that because Akion (the city employee) was covered as an additional insured under the endorsement, the event should be viewed from his standpoint, and that because Akion intentionally assaulted her, his actions were outside the coverage of the policy and therefore the City had not waived its immunity. The Court, however, held: "The City is the named insured. It certainly did not expect or intend that its employees would assault a third party. As to the City, the acts of Akion were an 'occurrence' under the terms of the insurance policy."

In the case at bar, even *if* from the standpoint of the "named insured" (Pineville) this was an occurrence, in that the Police Chief's actions were not expected by it, that would not result in the Town of Pineville's being liable in damages for a constitutional tort against the Plaintiff. In a common law tort action, the Town may well have waived its rights under N.C.Gen. Section 160A–485(a) and been liable in *respondeat superior*, because it would be indemnified by insurance and therefore waived its immunity. Here, the Town of Pineville was not liable because under the Statute (1983) it is not liable and no amount of insurance coverage would cause it to be liable for the Police Chief's acts. If the Town (named insured) is not liable, then the insurance company is not liable because the policy will pay "on behalf of the insured all sums which the *insured* shall become legally obligated to pay as damages because of bodily injury ..."

This was a tragic event, and both the Plaintiff and the Police Chief have suffered

emotional injury in addition to the physical injury of the Plaintiff.

However, the Plaintiff in his haste to raise a question of the violation of his *constitutional* rights in federal court, rather than bringing a common law tort action against Pineville, in state court, has "won the battle, but lost the war".

IT IS, THEREFORE, ORDERED that the Defendant's Motion for Summary Judgment is *GRANTED*, and the Plaintiff's Motion for Summary Judgment is *DENIED*.