CALVERT INSURANCE COMPANY,
Plaintiff–Appellant,

v.

WESTERN INSURANCE COMPANY,
Defendant–Appellee.

No. 88–2377.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 3, 1989.

Decided April 21, 1989.

Stephen Sonderby, Haskell & Perrin, Chicago, Ill., for plaintiff-appellant.

Brent A. Swanson, Clark McGreevy & Johnson, Rockford, Ill., for defendant-appellee.

Before CUMMINGS, POSNER and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

This is a diversity action in which Calvert Insurance Company ("Calvert") seeks a declaration that Western Insurance Company ("Western") must reimburse it for the expenses it incurred in defending two police officers and the City of East Dubuque ("City") in litigation arising from the arrest of Richard Moore. The City tendered the defense of the suit to Western, with whom the City had a general liability policy, but Western, because it viewed the allegations in Moore's complaint to be outside the coverage of the policy, refused to defend. Calvert, which also had a policy with the City, undertook the defense and eventually settled the suit.

Calvert then brought this action seeking reimbursement from Western for its expenses in handling the case. The district court, on cross-motions for summary judgment, found that Western was under no duty to defend either the City or the officers and thus granted summary judgment to Western. We agree with the district court that Western was entitled to summary judgment and, therefore, affirm.

## I.

This case had its genesis in the arrest of Richard Moore on March 21, 1982. According to Moore, two police officers employed by the City repeatedly struck him in the face and head with fists, night sticks, and other instruments during the course of the arrest. Moore filed a § 1983 complaint against the officers in federal district court alleging that the officers employed "excessive and unnecessary" force in the arrest.

The complaint also named the City as a defendant and asserted that the City was liable on two grounds. First, the complaint alleged that the incident involving Moore was but one of a series of ten incidents in which police officers of East Dubuque had violated the civil rights of citizens and that the City "had actual knowledge of the continuing course of incidents ... [and] through a prolonged course of deliberate indifference or reckless disregard for the civil rights of citizens, including Plaintiff, encouraged, approved of or acquiesced in repeated violations of citizens' civil rights." Second, the complaint alleged that the "Defendant City, with deliberate indifference or reckless disregard for the civil rights of

citizens, including Plaintiff, failed to supervise, train and control the Defendant officers," proximately causing the excessive use of force which caused Moore's injuries.

The City tendered the defense of the Moore action to Western, its primary general liability insurer. Western, however, refused to defend either the officers or the City claiming that, given the allegations made in Moore's complaint, there was not even a potential for coverage under the Western policy. The City then tendered the defense to Calvert, the City's excess insurance carrier, who did defend the City and its officers. Moore's suit was eventually settled by Calvert for $6000.

In this action, Calvert seeks to recover from Western the money it expended defending the City and its officers in the Moore case. According to Calvert, Western was under a duty to defend the City and its officers in the Moore case and because it failed to do so, must now reimburse Calvert for its expenses. Western has defended the action by claiming that no potential for coverage existed under its policy and therefore it did not owe the City a duty to defend.

Both sides filed motions for summary judgment. The district court found that, given the allegations of Moore's complaint, there was no potential for coverage afforded to the City or the officers by Western's policy. Thus, the district court granted summary judgment to Western. We agree with the district court that Western did not owe either the City or its officers a duty to defend and, therefore, affirm.

## II.

During the period at issue in the Moore complaint, the City was insured primarily by a Comprehensive General Liability Policy ("policy") issued by Western. The policy covered damages that the City became obligated to pay because of bodily injury or personal injury caused by an "occurrence." An "occurrence" was defined in the policy to mean "an accident, including continuous

or repeated exposure to conditions, which results in bodily injury or property damage *neither expected nor intended* from the standpoint of the insured." (emphasis added).

The policy was extended to cover employees of the City, including police officers, through a Broad Coverage Extension Endorsement ("endorsement"). The endorsement only covered employees acting within the scope of their employment, however, and excluded coverage for any acts which violated a penal statute. The policy was also extended by a Municipal Police Indemnity Endorsement ("police endorsement"). The police endorsement indemnified the City for all sums the City had to pay by reason of Chapter 24, Paragraph 1-4-6 of the Illinois statutes [1]. The police endorsement did not, however, apply to "any claim arising out of the willful misconduct of any policeman."

The issue in this case is whether the actions alleged in Moore's complaint potentially fall within the coverage of the policy. If the alleged actions of the officers and/or the City were even potentially covered under the terms of the policy, then Western owed the officers and/or the City a duty to defend. *Mutual Service Casualty Company v. Country Life Insurance Company*, 859 F.2d 548, 552 (7th Cir.1988). If Western had a duty to defend, Western is liable to Calvert for the expenses Calvert disbursed to defend the officers and the City. *Maneikis v. St. Paul Insurance Company*, 655 F.2d 818, 827 (7th Cir.1981); *Aetna Casualty and Surety Company v. Coronet Insurance Company*, 44 Ill. App.3d 744, 3 Ill.Dec. 371, 358 N.E.2d 914, 918 (1976).

## III.

### A. Police Officers

■ Because it is the allegations of the complaint that determine the scope of the coverage under Western's policy, it is with the allegations that we must begin.

---

1. Chapter 24 Paragraph 1-4-6 of the Illinois code requires municipalities with populations under 500,000 to indemnify their police officers

for injuries those officers cause to persons while engaged in the performance of their duties.

Moore's complaint states, as to the police officers, that "they repeatedly hit[ ] the Plaintiff [Moore] on the face and head with fists, night sticks or other instruments proximately caus[ing] the injuries and damages ... set forth." The question we must ask is whether those allegations constitute an "occurrence" under Western's policy. That is, were the injuries suffered by Moore "expected or intended from the standpoint" of the officers.[2]

The focus at all times, under Illinois law, is whether the *injury* was expected or intended by the police officers, not whether the acts of the officers were performed intentionally. *Argento v. Village of Melrose Park*, 838 F.2d 1483, 1497 (7th Cir. 1988); *Bay State Insurance Company v. Wilson*, 96 Ill.2d 487, 71 Ill.Dec. 726, 451 N.E.2d 880, 882 (1983); *Shelter Insurance Companies v. Smith*, 133 Ill.App.3d 635, 88 Ill.Dec. 752, 479 N.E.2d 365, 367 (1985). Even an intentional act will be covered under the policy language at issue here if it causes an unexpected and unintended result. *Argento*, 838 F.2d at 1497; *Grinnell Mutual Reinsurance Company v. Frierdich*, 79 Ill.App.3d 1146, 35 Ill.Dec. 418, 399 N.E.2d 252, 254 (1979). If the actor expects or intends the injury to follow from the act, however, there is no coverage under the policy. *Argento*, 838 F.2d at 1497 (subjective standard); *Affiliated FM Insurance Company v. Beatrice Foods Co.*, 645 F.Supp. 298, 301 (N.D.Ill.1985) (subjective standard).

In this case, there is no doubt that the officers "expected" an injury to result from the actions they are alleged by Moore to have committed. Injury is "expected" where the damages are not accomplished

by design or plan, *i.e.*, not "intended," but are "of such a nature that they should have been *reasonably anticipated* (expected) by the insured." *Aetna Casualty & Surety Co. v. Freyer*, 89 Ill.App.3d 617, 44 Ill.Dec. 791, 411 N.E.2d 1157, 1159 (1980) (emphasis added).[3] It has been recognized in Illinois that some injury is "reasonably anticipated" when the acts alleged to have occurred include blows to the face and head. *Argento*, 838 F.2d at 1497; *Shelter Insurance*, 88 Ill.Dec. at 754, 479 N.E.2d at 367 ("It has been recognized that a hard blow to the face constitutes an 'expected' injury with respect to the clause in question."); *Aetna Casualty*, 44 Ill.Dec. at 793, 411 N.E.2d at 1159 ("An injury caused by an assault and battery normally is not considered to be accidental ... even if the specific injury was not intended.").

Moore alleged in his complaint that the police officers repeatedly hit him in the face and head with their fists and nightsticks. The police officers should have reasonably anticipated that Moore would be injured by such acts, regardless of whether they could anticipate the precise injury Moore would actually suffer. Under those circumstances, Western was within its rights to refuse to defend the police officers as there was no potential for coverage under the Western policy.[4]

### B. The City

The more difficult question is whether the district court was correct in finding that the injuries were expected or intended from the standpoint of the City. Moore's inartfully drafted complaint apparently alleged two separate theories of civil

---

2. Western urges us to apply the willful standard set out in the police endorsement to test whether there is potential coverage for the officers' actions under the policy. It is unclear to us what difference there is between a willful standard and the expected or intended standard given the gloss put on the word "expected" by the Illinois courts. Nevertheless, we need not reach the question of whether the correct standard under the policy is willful or expected or intended for, as we shall see, even under the expected or intended standard, the officers' activities here are not within the potential coverage of the policy.

3. We focus, as we did in *Argento*, 838 F.2d at 1497 n. 22, on the expectation prong of the policy language since this exclusion is more easily satisfied than the intention prong.

4. Western contends that coverage was also excluded as to the police officers because (1) their acts were not taken within the scope of their employment and (2) their acts amounted to a violation of a penal statute. Again, given that the police officers should have reasonably anticipated the injury in this case, we need not reach those issues.

rights violations by the City. First, the complaint alleged that the incident involving Moore was one of a series of ten incidents of violations of citizens' civil rights committed by East Dubuque police officers. The complaint stated that the City had "actual knowledge" of these violations and yet, through a "prolonged course of deliberate indifference or reckless disregard for the civil rights of citizens, including Plaintiff, encouraged, approved of or acquiesced" in the violations. Similar allegations of civil rights violations have been held to state a cause of action under § 1983. *See Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir.1985) ("a persistent failure to take disciplinary action against officers can give rise to the inference that a municipal policy ratified conduct, thereby establishing a 'custom' within the meaning of *Monell*"); *Johnson v. Panizzo*, 664 F.Supp. 336, 341–42 (N.D. Ill.1987); *Koch v. Schneider*, 550 F.Supp. 846, 853 (N.D.Ill.1982); *Means v. City of Chicago*, 535 F.Supp. 455, 459–60 (N.D.Ill. 1982). *But see Strauss v. City of Chicago*, 760 F.2d 765 (7th Cir.1985) (affirmed dismissal of complaint alleging municipal acquiescence in constitutional violations by police where the complaint failed to show that the alleged acts were related to municipal policy and not simply isolated events).

Moore's second allegation against the City was that the "City, with deliberate indifference and reckless disregard for the civil rights of citizens, including Plaintiff [Moore], failed to supervise, train and control the Defendant Officers and proximately caused the use of excessive and unnecessary force upon Plaintiff, causing the injuries and damages [to Moore]." At the time the complaint was filed, this allegation of reckless failure to train and supervise also stated a cause of action under § 1983. *See Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S.

833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982); *Hill v. Marinelli*, 555 F.Supp. 413, 416 (N.D.Ill. 1982).[5]

At a minimum, each of the allegations against the City in Moore's complaint claim that the City acted recklessly and thereby proximately caused the unnecessary force which injured Moore. The question in this case is whether the reckless conduct ascribed to the City by Moore potentially constitutes an "occurrence" as defined in Western's policy.[6] In other words, were Moore's injuries "expected" by the City given the City's reckless actions as alleged by Moore's complaint. If this question is answered affirmatively, then there was no "occurrence" for purposes of Western's policy and Western was under no duty to defend the City.

We believe that, under the allegations of Moore's complaint, the City did "expect" Moore's injuries and thus Western was within its rights in refusing to defend the City. The allegations in Moore's complaint charge the City with recklessness. We have previously held that injuries resulting from reckless acts are "expected" injuries. *Mutual Service Casualty Insurance Company v. Country Life Insurance Company*, 859 F.2d 548, 552 (7th Cir.1988); *see also West American Insurance Company v. Bank of Isle of Wight*, 673 F.Supp. 760, 765 (E.D.Va.1987); *Farm Bureau Town & Country Insurance Company v. Turnbo*, 740 S.W.2d 232 (Mo.App.1987) (extended discussion equating recklessness with expectation of injury). As discussed above, an expected injury is one in which the "[i]njuries are of such a nature that they should have been *reasonably anticipated* by the insured." *Bay State Insurance Company v. Wilson*, 96 Ill.2d 487, 71 Ill. Dec. 726, 451 N.E.2d 880, 882 (1983) (emphasis added). A person is reckless when

---

**5.** A recent Supreme Court case has held that an allegation of mere reckless failure to train does not state a cause of action against a municipality under § 1983. *City of Canton, Ohio v. Harris*, —— U.S. ——, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). In *Canton*, the Court held that, while a claim of failure to train is cognizable under § 1983, the failure to train must reflect "deliber-

ate indifference" to the constitutional rights of the municipality's citizens.

**6.** We will only discuss the recklessness component of Moore's allegations against the City because if reckless acts are excluded from coverage then, by necessity, acts taken with deliberate indifference are also excluded.

they act with complete indifference to a known significant risk of harm. *Archie v. City of Racine,* 847 F.2d 1211, 1219 (7th Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989); Ill.Rev. Stat. ch. 38, § 4–6 (Smith–Hurd 1972) ("A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow."). Since a known significant risk of harm is one that can be reasonably anticipated, a person who acts recklessly "expects" an injury for purposes of the policy language at issue here. Thus, where a City recklessly fails to train or supervise its officers and where it recklessly fails to act even though it is aware of a series of civil rights violations against its citizens, the City "expects" that injuries such as those suffered by Moore will occur.

Calvert correctly points out that several courts have found coverage under identical policy language where there were factual allegations of police misconduct similar to those made by Moore. *Gordon v. Hartford Accident and Indemnity Company,* 576 F.Supp. 203 (W.D.N.C.1983), *aff'd,* 740 F.2d 961 (4th Cir.1984); *Town of Kimball v. Aetna Casualty & Surety Company,* 529 F.Supp. 26 (S.D.W.Va.1981), *aff'd,* 667 F.2d 439 (4th Cir.1981); *Grant v. North River Insurance Company,* 453 F.Supp. 1361 (N.D.Ind.1978). In each of those cases, however, the theory of recovery alleged in the underlying complaint was different from the theory of reckless conduct propounded by Moore.

For example, in *Gordon,* the underlying complaint charged that the municipality was liable for the actions of the chief of police who, while acting within the scope of his employment, intentionally shot the underlying plaintiff. 576 F.Supp. at 204. The plaintiff claimed the municipality was liable for the chief's actions under a theory of respondeat superior. *Id.* at 207. The district court *assumed* that the municipality was covered by the policy for the alleged occurrence since under a theory of respondeat superior, the municipality is held liable not because it expected or intended a result, but simply because it employed the wrongdoer. Nevertheless, the district court went on to find that the municipality could not be liable to the plaintiff because there is no respondeat superior liability under § 1983. *Id.* Similarly, in *Grant,* one of the underlying theories of municipal liability was state law respondeat superior. 453 F.Supp. at 1364. The factual allegations in the case involved a shooting by police officers during the course of an arrest. *Id.* The district court, in construing policy language identical to the language in Western's policy, held that while the policy afforded no coverage to the police officers, there was potential coverage for the municipality since the intent of the officers could not be imputed to the municipality. *Id.* at 1367–68. Again, coverage existed because municipal liability was premised solely on the actions of the municipality's employees and not, as in the case at bar, on the reckless or intentional actions of the municipality itself.

Finally, in *Town of Kimball,* numerous theories were propounded against the municipality including "charges that the town knew of the officer's propensity for violence and *negligently failed to supervise* him." 667 F.2d at 440 (emphasis added). The court in that case held that the municipality was covered by the policy, given the allegations in the underlying complaint, because the jury could return a verdict against it based on negligence. By contrast, there were no allegations in Moore's complaint which sounded in negligence or, for that matter, even gross negligence. In sum, none of the cases cited by Calvert support its claim that the actions of the City were potentially covered by Western's policy.

## IV.

For all the reasons discussed above, we AFFIRM the decision of the district court holding that Western was under no duty to defend either the officers or the City.