60 F.3d 1273
 Paul CARNEY, individually, and Christopher Benson,
individually, Plaintiffs,
v.
VILLAGE OF DARIEN, Darien Chief of Police Donald Hoppe,
President of the Village of Darien Michael
Obershal, et al., Defendants-Appellants,
and
Tower Insurance Company, Incorporated, an insurance
corporation, now known as G.R.E. Corporation,
Defendant-Appellee.
 No. 94-2973.
 United States Court of Appeals,
Seventh Circuit.
 Argued March 29, 1995.
Decided July 31, 1995.
 
 1
 Michael J. Cohen, Meissner & Tierney, Milwaukee, WI, Jerome Wiener, Schain, Firsel & Burney, Chicago, IL, for plaintiffs.
 
 
 2
 Michael J. Cieslewicz (argued), Vicki L. Arrowood, Kevin A. Christensen, Kasdorf, Lewis & Swietlik, Milwaukee, WI, for Village of Darien, Donald Hoppe, Michael Obershal, Kenneth Blank, Harold Mayer, Curtis Schellhase, Joseph Moran, Dean Logterman, Wesley Hanson, Employers Mut. Cas. Co., Village Trustees.
 
 
 3
 Susan R. Tyndall (argued), Tomislav Z. Kuzmanovic, Michael J. Pfau, Hinshaw & Culbertson, Milwaukee, WI, for Tower Ins. Co., Inc.
 
 
 4
 Before CUMMINGS and KANNE, Circuit Judges, and WALTER,[1] District Judge.
 
 
 5
 WALTER, District Judge.
 
 
 6
 Defendants, the Village of Darien, Darien Chief of Police Donald Hoppe, Village of Darien President Michael Obershal, Village of Darien Trustees Kenneth Blank, Harold Mayer, Dean Logterman, Wesley Hanson (hereinafter collectively referred to as the "Village Defendants") and Defendant Employers Mutual Casualty Company (hereinafter "Employers Mutual"), have appealed the granting of a motion for summary judgment in favor of Tower Insurance Corporation (hereinafter "Tower"), which declared that Tower had no duty to defend or indemnify its insured, the Village Defendants, because the allegations in the plaintiffs' complaint fell outside the scope of coverage provided by Tower's insurance policies. For the reasons set forth below, we AFFIRM the district court's entry of summary judgment in favor of Tower and the corresponding declaratory judgment.
 
 BACKGROUND
 
 7
 On June 26, 1991, plaintiffs Paul Carney and Christopher Benson filed a complaint alleging a violation of 42 U.S.C. Sec. 1983. The facts giving rise to the complaint began on July 4, 1985, when Village of Darien Police Officer Donald White effected a traffic stop upon the plaintiffs as they were driving on Wisconsin Route 14 in the Village of Darien. Officer White issued traffic citations and arrested the two individuals for having open intoxicants in the vehicle. Plaintiffs claim that subsequent to their arrests, Officer White harassed, threatened and attempted to coerce them into performing sexual acts in exchange for voiding the citations.
 
 
 8
 On October 30, 1992, plaintiffs filed a First Amended Complaint which contained six counts.[2] Counts I and IV allege that Officer White's actions against the plaintiffs were committed "under color of state law and with deliberate, wilful, malicious and reckless indifference and disregard for [the plaintiffs'] rights guaranteed under the Constitution of the United States." The specific constitutional violations alleged were of the Fifth Amendment right of privacy and liberty interest in bodily integrity, and the Fourth Amendment right to be free from unreasonable searches and seizures.
 
 
 9
 Counts II and V include allegations against the Village Defendants and claim that because there had been several complaints about White's abusiveness prior to the July 4, 1985 incident, the Village Defendants knew or should have known that White was unfit to be a police officer; that he would engage in unconstitutional conduct while under the employ of the Village of Darien. Plaintiffs specifically allege that the Village Defendants were aware of one similar incident in 1984, when White offered to void a traffic citation issued to Michael M. Rowe in exchange for sexual acts. Plaintiffs also claim that the Village Defendants' failure to adequately supervise, hire or instruct White in the performance of his duties, "amounted to a deliberate indifference and disregard for the constitutionally protected rights of citizens with whom Officer White would come in contact in the course of his employment as a Darien police officer." First Amended Complaint Counts II and V p 26.
 
 
 10
 Counts I, II, IV and V, also assert liability on the part of Employers Mutual and Tower Insurance Company, each of which issued insurance policies to the Village of Darien and its employees that were in full force and effect on July 4, 1985. Counts III and VI involve statutory indemnity claims which allege that according to Section 895.46(1)(a) of the Wisconsin Statutes, the Village of Darien is liable as indemnitor for the payment of all damages--including attorneys' fees, awarded against Officer White and the Village Officials. These counts, however, are not the subject of this appeal and will not be reviewed.
 
 
 11
 All of the defendants, except White, filed answers denying the allegations in the complaint.[3] Employers Mutual accepted the defense of the Village Defendants and filed an answer on their behalf. Tower, on the other hand, believing that it owed no duty to defend against the allegations in the complaint, filed an answer solely on its own behalf. Because of Tower's refusal to defend its insured, the Village Defendants along with Employers Mutual filed a cross-claim against Tower alleging that Tower was obligated to defend and indemnify its insured for the allegations contained in the plaintiffs' complaint. In answer to the cross-claim, Tower raised the affirmative defense of non-coverage.
 
 
 12
 The Village Defendants and Employers Mutual filed a motion for summary judgment asking the court to declare that Tower had a duty to defend and indemnify its insured. In response, Tower filed a cross-motion seeking a declaratory judgment of non-coverage, arguing that Tower's policies eliminated coverage for all of the plaintiffs' allegations. The district court determined that Tower had successfully established that the allegations in the complaint were specifically excluded from coverage by the terms of the policies and Tower owed no duty to defend or indemnify the Village Defendants. Accordingly, on January 27, 1994, the district court granted Tower's motion for summary judgment and issued a declaratory judgment of non-coverage in Tower's favor. The remaining issues in the case were tried to a jury which rendered a verdict in favor of the plaintiffs, finding that White intentionally deprived them of their constitutional rights, but that his actions were not made while acting within the course and scope of his employment with the Village of Darien. The jury further found that former Village of Darien Police Chief Donald Hoppe acted intentionally or recklessly violating the rights of the plaintiffs and causing them injury. As to the remaining defendants, the jury determined that neither their acts nor omissions deprived the plaintiffs of their constitutional rights. The district court entered judgment in accordance with the jury's findings on July 13, 1994 and this appeal ensued on August 9, 1994.
 
 
 13
 The Village Defendants and Employers Mutual appeal the determination of the district judge that Tower had no duty to defend the underlying action. Specifically, they assert two arguments on appeal: first, that Tower breached its duty to defend its insured and therefore has waived its right to rely on any policy defenses; and second, that the insurance policies issued by Tower to the Village Defendants provided coverage for the allegations in the Plaintiffs' complaint.
 
 DUTY TO DEFEND
 
 14
 The determination of whether an insurance company owes a duty to defend is a question of law reviewed de novo and without deference to the trial court. Professional Office Buildings, Inc. v. Royal Indemnity Company, 145 Wis.2d 573, 580, 427 N.W.2d 427, 429 (Ct.App.1988). In return for the premiums paid by the insured, an insurance company owes its insured the duty to defend and indemnify for those claims falling within the parameters of the insurance policy. Elliott v. Donahue, 169 Wis.2d 310, 321, 485 N.W.2d 403, 407 (1992). Wisconsin employs a complaint test for determining whether an insured's claim triggers the insurer's duty to defend. Id. If there are allegations in the complaint which, if proven, would give rise to liability under the terms of the insurance policy, the insurer has a duty to defend. Sola Basic Industries, Inc. v. U.S. Fidelity & Guaranty Co., 90 Wis.2d 641, 646, 280 N.W.2d 211, 214 (1979). Any existing doubt as to whether an insurer owes a duty to defend is resolved in favor of the insured. Id.
 
 
 15
 An insurer that breaches its duty to defend waives its right to later challenge coverage. Professional Office Buildings, Inc., 145 Wis.2d at 585, 427 N.W.2d at 431; See also, Grieb v. Citizens Casualty Co., 33 Wis.2d 552, 148 N.W.2d 103 (1967) (holding that the insurer who improperly refuses to defend its insured does so at its own peril). However, an insurer's refusal to tender a defense to its insured does not automatically result in a breach of the contractual duty to defend. If the coverage issue is "fairly debatable" from the standpoint of the insured and a coverage determination by the court precedes the liability action, the insurer runs no risk of breaching its duty to defend.[4] Kenefick v. Hitchcock, 187 Wis.2d 218, 522 N.W.2d 261 (Ct.App.1994); Mowry v. Badger State Mutual Casualty Company, 129 Wis.2d 496, 516-517, 385 N.W.2d 171, 180-181 (1986). An insured seeking a preliminary determination by the court on coverage can either request a bifurcated trial on the issues of coverage and liability, and move to stay any proceedings on liability until after the coverage issue is resolved, or seek a declaratory judgment to obtain a resolution of coverage prior to the liability trial. Id; Grube v. Daun, 173 Wis.2d 30, 75, 496 N.W.2d 106, 123 (Ct.App.1992). Under either procedure, if coverage is determined to exist, the insurer must then tender a defense to its insured regarding the subsequent liability issue. Elliott, 169 Wis.2d at 318, 485 N.W.2d at 406.
 
 
 16
 Appellants assert that Tower breached its duty to defend because "Tower did not move to bifurcate the coverage issues from the liability issues in the case, nor did Tower immediately initiate a declaratory judgment motion on the issue of insurance coverage," but instead, "Tower let the defendants take the lead, and filed a cross-motion for summary judgment after the defendants had already filed their motion."[5] There is clearly no support for appellants' position that an insurer denying coverage must immediately initiate a declaratory judgment prior to any other party's filing of such motion. All that is required of the insurer is to seek a court's determination on the coverage issue, instead of refusing to defend based solely upon its own determination of coverage. Professional Office Buildings, 145 Wis.2d at 585; 427 N.W.2d at 431. We hold that Tower complied with its duty to defend by seeking a declaratory judgment from the district court on the issue of insurance coverage prior to the trial on the liability issue. As the court stated in Barber v. Nylund, 158 Wis.2d 192, 197, 461 N.W.2d 809, 811 (Ct.App.1990), an insurer who properly follows the procedure recommended by the Wisconsin Supreme Court of first seeking a determination on coverage prior to the liability issue, has not breached its duty to defend. The court explained that only if the insurer does not properly seek a preliminary coverage determination by a court, and then refuses to defend the insured at the trial on liability, has it waived its right to later challenge coverage. Id. Accord, Kenefick, 187 Wis.2d at 234, 522 N.W.2d at 267 (where court refused to apply the waiver remedy to a situation where the trial was properly bifurcated.) Accordingly, we hold that Tower did not breach its duty to defend the Village Defendants, and is not estopped from relying on its policy exclusions in contesting coverage.
 
 POLICY COVERAGE
 
 17
 Appellants claim coverage existed under each of the two policies issued by Tower to the Village of Darien and its officials: the Special Multi-Peril Policy (hereinafter "SMP") and the Commercial Umbrella Policy (hereinafter "CU"). There is no dispute that these policies were in effect on July 4, 1985, the date of the allegations in the complaint. The dispute is over whether the terms of the insurance policies provided coverage for the plaintiffs' allegations.
 
 
 18
 The interpretation of language in an insurance contract is a question of law which we review without deference to the trial court. Katze v. Randolph & Scott Mutual Fire Insurance Company, 116 Wis.2d 206, 212, 341 N.W.2d 689, 691 (1984). Under Wisconsin law, the allegations in the complaint determine the scope of coverage with no extrinsic evidence being considered. Professional Office Buildings, 145 Wis.2d at 581-582, 427 N.W.2d at 430. Wisconsin law also dictates that coverage clauses are interpreted broadly in favor of the insured, while exclusionary clauses are narrowly construed. Lawver v. Boling, 71 Wis.2d 408, 238 N.W.2d 514 (1976). In light of these rules of construction, we must compare the language in the complaint with the terms of the two insurance policies issued to the Village Defendants to determine whether Tower provided coverage for the plaintiffs' allegations.
 
 I. Special Multi-Peril Policy
 
 19
 The Special Multi-Peril Policy, which provided liability coverage to the Village of Darien and its employees, contained two separate coverage parts.[6] The first contained broad comprehensive coverage for bodily injury and property damage, and the second covered certain types of personal injury. The section on bodily injury and property damage provided as follows:
 
 
 20
 I. COVERAGE--BODILY INJURY AND PROPERTY DAMAGE LIABILITY
 
 
 21
 The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, ...
 
 
 22
 The term "occurrence" is defined in the policy as:
 
 
 23
 "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." (Emphasis added).
 
 
 24
 Our inquiry under this portion of the policy is whether the allegations against Officer White and the Village Defendants constitute an "occurrence" under Tower's policy. Tower argues that the plaintiffs' allegations were not caused by an "occurrence," and therefore not covered, because the resulting injury was expected from the standpoint of both Officer White and the Village Defendants. We agree.
 
 
 25
 We begin with the plaintiffs' allegations against Officer White, specifically, that he engaged in harassment and sexual coercion with "deliberate, willful, malicious and reckless indifference and disregard for [the plaintiffs'] rights guaranteed under the constitution." First Amended Complaint Count I p 10. The Wisconsin Supreme Court in Raby v. Moe, 153 Wis.2d 101, 110, 450 N.W.2d 452, 455 (1990), explained that where an insurance policy precludes coverage for bodily injury that is "expected or intended" by the insured, the intent necessary to invoke the exclusion "may be actual or may be inferred from the nature of the insured's intentional act." Intent to cause injury exists if the actor subjectively intends to cause injury or if injury is substantially certain to result from the actor's conduct. Gouger v. Hardtke, 167 Wis.2d 504, 512, 482 N.W.2d 84, 88 (1992). Intent is established even if the specific injury intended is not the resulting injury. Pachucki v. Republic Ins. Co., 89 Wis.2d 703, 712, 278 N.W.2d 898, 903 (1979).
 
 
 26
 In this case, the allegations against Officer White clearly speak of intentional conduct. The requisite intent is established not only because White's specific intent to injure could be inferred from the nature of his alleged conduct, but also because acts of harassment and sexual coercion are certain to cause injury. Thus, we conclude that because the complaint alleges that Officer White acted with intent to injure, any resulting injury was not the result of an occurrence, and therefore not covered by the bodily injury provision of the Tower SMP policy.
 
 
 27
 Our inquiry with regard to the allegations against the Village Defendants similarly is whether they "expected or intended" the injury to the plaintiffs.[7] The claims against the Village Defendants include: 1) that several village officials had knowledge of previous acts by Officer White of abusiveness and sexual misconduct, including a complaint by Michael Rowe in 1984 alleging sexual coercion against Officer White; 2) that the subsequent failure of these officials' to investigate White's fitness to serve as a police officer or to supervise his activities was done with total disregard for the safety of innocent citizens; 3) that the village officials also had notice of Officer White's unexplained voidance of several tickets, and never investigated such misconduct; 4) that each of these acts and omissions were done with deliberate indifference and total disregard for the constitutionally protected rights of citizens who may come in contact with Officer White, including the plaintiffs; and 5) that "the Village officials knew or should have known that Officer White was unfit to be a police officer and that he would engage in tortious, offensive unconstitutional conduct with citizens while on duty as a Darien police officer."
 
 
 28
 The term "expected" as found in occurrence policy language was explained by this court in Calvert Insurance Company v. Western Insurance Company, 874 F.2d 396, 399 (7th Cir.1989): "[i]njury is expected where the damages ... are of such a nature that they should have been reasonably anticipated by the insured." The complaint in Calvert alleged that the insured city had knowledge of previous constitutional violations of its police officers, but with deliberate indifference and reckless disregard for the citizens, acquiesced in the conduct and failed to supervise and properly train the officers. Id. This court focussed on the allegation of reckless conduct against the city, defining recklessness as a conscious disregard of a known significant risk of harm. Id. We held that given the alleged reckless actions of the city, the injury to the plaintiff was expected because it should have been reasonably anticipated.
 
 
 29
 The facts in the present case are remarkably similar to the facts in Calvert.[8] Plaintiffs essentially allege that the Village Defendants were aware of or had notice of prior incidents of Officer White, and that because of this prior knowledge, they should have anticipated misconduct to occur in the future, and should have taken remedial measures to insure against any reoccurrence. We believe that such allegations amount to an "expectation" by the Village Defendants of the plaintiffs' injuries, and as such, are excluded from coverage by the terms of the Tower policy.
 
 
 30
 Appellants assert that the Calvert case is distinguishable because there, the only allegation against the city was of actual knowledge of the police officers' prior conduct, whereas here, the plaintiffs allege actual knowledge on the part of the Village Defendants and alternatively that they "knew or should have known" about Officer White's prior occurrences. Appellants reason that if the Village Defendants merely should have known of the prior occurrences, then they could not have "expected" that Officer White would harm the plaintiffs in this case. We disagree with the appellants' belief that the complaint asserts alternative allegations regarding the knowledge of the prior occurrences. The only "should have known" language in the complaint is within the allegation that the Village Defendants should have known that Officer White was unfit to be a police officer; no such language appears regarding the Village's knowledge of past misconduct. In fact, a careful review of the complaint reveals a consistent assertion of actual knowledge or notice of Officer White's previous conduct by the Village Defendants.[9]
 
 
 31
 The instant case is also analogous to the Eighth Circuit case of City of Carter Lake v. Aetna Casualty & Surety Company, 604 F.2d 1052 (8th Cir.1979), where the court found that because the insured city had previously been informed of sewage equipment malfunctions resulting in flooding of the plaintiff's home, the subsequent flooding of the same home was not the result of an accident or occurrence because the city "expected" the injury to result given the notice of the prior similar incident. The Eighth Circuit explained that if:
 
 
 32
 [an] insured knew or should have known that there was a substantial probability that certain results would follow from his acts or omissions then there has not been an occurrence ... when such results actually come to pass. Id. at 1059.
 
 
 33
 Substantial probability, as defined by the court, exists if there are indications sufficient to forewarn a reasonably prudent person that the results are highly likely to occur. Id. at 1059, n. 4. The allegations that the Village Defendants were aware of numerous complaints against Officer White regarding his prior abusive nature, sexual misconduct and regular unexplained voidance of traffic tickets constitute sufficient indications to warn the village officials that Officer White would probably commit similar acts in the future. Accordingly, any injury resulting from a later act would not be an accident or occurrence, and therefore not within the coverage provision on bodily injury of the SMP policy.
 
 
 34
 We now turn to the section of the SMP policy which provided coverage for certain types of personal injury. Appellants believe that the allegations in the plaintiffs' complaint are covered by the following provisions of the personal injury section of the SMP policy:
 
 VI. PERSONAL INJURY LIABILITY
 
 35
 The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury (herein called "personal injury") sustained by any person or organization and arising out of one or more of the following offenses:
 
 
 36
 (1) Group 1--false arrest, detention or imprisonment, or malicious prosecution;
 
 
 37
 * * * * * *
 
 
 38
 However, Tower points to a specific provision in the policy which excluded coverage for:
 
 
 39
 personal injury arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any insured ... (emphasis added).
 
 Wisconsin Statute Sec. 940.30 provides:
 
 40
 False Imprisonment. Whoever intentionally confines or restrains another without the person's consent and with knowledge that he or she has no lawful authority to do so is guilty of a Class E felony.
 
 
 41
 The complaint alleges acts of restraint and confinement by Officer White which could violate the above Wisconsin statute, and as explained earlier, the complaint also alleges that Officer White intentionally committed these acts. Because Officer White is alleged to have willfully violated a penal statute, any personal injury resulting from such conduct is specifically excluded from the personal injury coverage.[10]
 
 II. Commercial Umbrella Policy
 
 42
 The other policy issued to the Village of Darien by Tower was a commercial umbrella policy which limited coverage to personal injury, property damage and advertising injury or damage caused by an "occurrence." Occurrence is defined in the policy as:
 
 
 43
 an accident or event including continuous or repeated exposure to conditions, which results, during the policy period in PERSONAL INJURY or PROPERTY DAMAGE neither expected nor intended from the standpoint of the INSURED.
 
 
 44
 Both the bodily injury provision of the SMP policy and this provision of the commercial umbrella policy grant coverage only for injuries that are the result of an occurrence. Thus, just as the bodily injury provision did not cover the plaintiffs' allegations because the alleged injuries were expected from the standpoint of both Officer White and the Village Defendants, for these same reasons, the commercial umbrella policy does not provide coverage.
 
 
 45
 The commercial umbrella policy also included a municipality endorsement which provided in relevant part:
 
 
 46
 (B) IT IS FURTHER AGREED THAT THIS POLICY SHALL NOT APPLY TO ANY LIABILITY, UNLESS SUCH LIABILITY IS COVERED BY UNDERLYING INSURANCE AS DESCRIBED IN THE SCHEDULE OF UNDERLYING INSURANCE, ARISING OUT OF:
 
 
 47
 * * * * * *
 
 
 48
 (2) PERSONAL INJURY LIABILITY AS DEFINED BELOW:
 
 PERSONAL INJURY MEANS:
 
 49
 * * * * * *
 
 
 50
 (B) FALSE ARREST, FALSE IMPRISONMENT, WRONGFUL DETENTION, MALICIOUS PROSECUTION;
 
 
 51
 * * * * * *
 
 
 52
 (7) PERSONAL INJURY OR PROPERTY DAMAGE ARISING OUT OF ANY ACT OF, OR FAILURE TO ACT BY, OR ANY ERROR, OMISSION OR MISTAKE COMMITTED BY OR ALLEGED TO HAVE BEEN COMMITTED BY, ANY POLICE OFFICER, LAW ENFORCEMENT AGENCY GOVERNED, CONTROLLED BY, OR UNDER THE NAMED INSURED.
 
 
 53
 This section precludes coverage for certain personal injuries unless the primary SMP policy covers such injuries. Not only does the primary SMP exclude coverage for the plaintiffs' allegations, but this municipality endorsement would also preclude coverage for the allegation of false arrest or imprisonment, or any acts or omissions of Officer White. Thus, because we find that neither of the policies issued by Tower to the Village Defendants grant coverage for the plaintiffs' allegations, we affirm the district court's entry of summary judgment in favor of Tower.
 
 
 
 [1]
 The Honorable Donald E. Walter of the United States District Court for the Western District of Louisiana, sitting by designation
 
 
 [2]
 Counts I through III are labeled as Carney's claims and Counts IV through VI are Benson's, however, for all practical purposes the allegations of the two individual plaintiffs are identical
 Although we believe that focusing on the language in either the complaint or the amended complaint would obtain the same result, we choose to rely on the allegations as stated in the First Amended Complaint which provides a more thorough description of the allegations against the Village Defendants.
 
 
 [3]
 Because White failed to provide an answer to the complaint against him, the district court, by order dated April 8, 1992, entered a default judgment against White with respect to his liability under Counts I and IV of the complaint. The court only addressed the issue of liability, leaving assessment of damages to be considered by a jury with the plaintiffs' claims against the remaining parties
 
 
 [4]
 We believe that the issue of insurance coverage was a viable issue fairly debatable from Tower's standpoint as will be clarified in the coverage section of this opinion
 
 
 [5]
 Appellants' Brief at page 37
 
 
 [6]
 Although the Special Multi-Peril Policy named the Village of Darien as its insured, the Village's employees are also covered under the following policy provision found at page 31-32:
 II. PERSONS INSURED
 Each of the following is an insured under this insurance to the extent set forth below:
 (c) if the named insured is designated in the Declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, member of the board of trustees, directors or governors or stockholder, or employees, or volunteer workers thereof while acting within the scope of his duties as such.
 
 
 [7]
 We choose to focus on whether the Village Defendants "expected" the injury to the plaintiffs, as we did in Calvert Insurance Company, since expectation is somewhat easier to satisfy than intention
 
 
 [8]
 It is immaterial that the plaintiffs in this case did not allege reckless conduct in conjunction with the allegation of deliberate indifference against the Village Defendants because, as we stated in Calvert, "if reckless acts are excluded from coverage then, by necessity, acts taken with deliberate indifference are also excluded." Id. at 400, n. 6
 
 
 [9]
 Specifically, Paragraphs 12, 14, 15, 16, 19, and 22 of the Amended Complaint in Count II contain allegations of awareness or notice on the part of the Village Defendants
 
 
 [10]
 Because the exclusion applies to personal injury resulting from a penal violation of any insured, it is not necessary to find that the Village Defendants also violated a penal statute or consented to such violation. Nevertheless, the allegation in the complaint that the Village Defendants' acts or omissions amounted to "tacit authorization" of Officer White's offensive acts provides evidence of the Village's consent to Officer White's violation of the false imprisonment statute