John RANES and Mary Ranes, Plaintiffs-Appellants,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
Defendant-Respondent.†

Court of Appeals

*No. 97–0441. Submitted on briefs July 8, 1997.—Decided July 31, 1997.*

(Also reported in 569 N.W.2d 359.)

†Petition to review granted.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Charles B. Harris* and *Lora H. Woods* of *Doar, Drill & Skow, S.C.*, of Baldwin.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Ward I. Richter* and *David J. Pliner* of *Bell, Metzner, Gierhart & Moore, S.C.*, of Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. John and Mary Ranes appeal a judgment dismissing their action against American Family

Mutual Insurance Company, the Ranes' underinsured motorist carrier. The Ranes contend the trial court erred by concluding that their failure to give notice of a settlement between the insured and the tortfeasor as required by *Vogt v. Schroeder*, 129 Wis. 2d 3, 383 N.W.2d 876 (1986), is a bar to UIM coverage without regard to whether the underinsurer has been prejudiced by the failure to receive notice. Because we conclude that underinsured motorist coverage will not be defeated by failure to give the required *Vogt* notice unless the insurer has been prejudiced by the failure, we reverse the judgment and remand to the trial court to determine whether American Family has been prejudiced by the failure to give the *Vogt* notice.

John Ranes was injured in an automobile accident involving a vehicle owned by Kinney Dairy Equipment, Inc., and driven by Robert Elsenpeter. The Ranes started an action against Kinney Dairy, its insurer, Secura Insurance, and Elsenpeter, for injuries sustained as a result of this accident. Dean DuCharme, a passenger in Ranes' vehicle, also commenced an action for damages. Ultimately, both the Ranes and DuCharme settled claims against the defendants and executed releases to the defendants. The Ranes did not give prior notice of the settlement to American Family.

American Family had issued underinsured motorist coverage in a series of policies to the Ranes. The policies provided $100,000 per person and $300,000 per accident coverage, but provided in a reducing clause that the liability limits will be reduced by payment made on or behalf of the tortfeasor. Shortly after the settlement was concluded, the Ranes became aware of the possibility that the reducing clause in American Family's policy might be void as it applied to the underinsured motorist coverage provided by American

Family's insurance policies. *See Kuhn v. Allstate Ins. Co.*, 181 Wis. 2d 453, 463, 510 N.W.2d 826, 830 (Ct. App. 1993), aff'd, 193 Wis. 2d 50, 532 N.W.2d 124 (1995).

Accordingly, the Ranes filed suit against American Family asserting a claim for underinsured motorist benefits pursuant to their insurance policies. American Family moved for summary judgment based upon the Ranes' failure to give a *Vogt* notice prior to completing the settlement with the defendants in the initial action and executing a release to those defendants. Because the issues of notice and prejudice involve substantial discovery and raise issues of fact, the parties agreed to submit the matter to the trial court to determine whether the failure to give the *Vogt* notice would bar the Ranes' claim for underinsured motorist benefits. The trial court concluded that the failure to give notice was a bar to the Ranes' underinsurance claim regardless whether American Family was prejudiced by the failure to give notice and, accordingly, entered a summary judgment dismissing the Ranes' claim.

The question whether the failure to give a *Vogt* notice bars a claim for underinsured motorist benefits even in cases when the underinsurer has not been prejudiced by failure to give such notice raises issues of law that are determined independently of the trial court's determination. *Delta Group, Inc. v. DBI, Inc.*, 204 Wis. 2d 515, 521, 555 N.W.2d 162, 165 (Ct. App. 1996) (Application of principles of law to facts presents question of law.). To the extent that the issues involve an interpretation of an insurance contract, the standard of review once again involves questions of law that we review de novo. *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 810, 456 N.W.2d 597, 598 (1990).

A notice of the potential settlement of an underinsured's claim against a tortfeasor has been required since *Vogt* was decided in 1986. The requirement that the underinsured motorist carrier received notice of a potential settlement was designed to protect the underinsurer's right of subrogation against the tortfeasor for benefits it was required to pay pursuant to its underinsured motorist coverage. *Vogt*, 129 Wis. 2d at 20, 383 N.W.2d at 884. Without notice of a potential settlement, the resolution of the insured's claim against the alleged tortfeasors and the execution of releases would defeat the insurer's right to seek subrogation for any money the insurer may be required to pay under the underinsurance motorist provisions of the policy. *Id.* Accordingly, the supreme court required notice of impending settlement to be given so that the underinsured carrier could take such steps as necessary to protect their subrogation rights against the tortfeasor. *Id.* at 26, 383 N.W.2d at 885.

Whether the failure to give the *Vogt* notice bars an underinsured claim even when the underinsured carrier has not been prejudiced by the failure to give notice is a matter of first impression in Wisconsin. A variety of other states, however, have addressed this issue and the majority have determined that the failure to give notice of settlement does not act as a bar to an underinsured claim unless the insurer has been prejudiced by the failure to give notice. *Mulholland v. State Farm Mut. Auto. Ins. Co.*, 527 N.E.2d 29, 33 (Ill. App. 1988); *American Family Mut. Ins. Co. v. Baumann*, 459 N.W.2d 923, 927 (Minn. 1990); *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994). While other states have held to the contrary, *Hartford Fire Ins. Co. v. Macri*, 842 P.2d 112 (Cal. 1992); *Lee v. Auto-*

*Owners Ins. Co.*, 505 N.W.2d 866 (Mich. App. 1993),[1] the overwhelming majority of states have concluded that the failure to give notice will not bar an underinsured motorist claim unless the insurer has suffered some prejudice from the failure to receive such notice.

We conclude that the majority rule is the better reasoned and more persuasive rule of law. We reach this conclusion for a variety of reasons, the most important of which is that this rule comports to the general public policy now in existence in Wisconsin for similar issues. We start with the premise that an insured has by contract obtained certain coverage for which a fair and adequate premium has been paid. American Family argues that the *Vogt* notice is required not only by the laws of Wisconsin but by the terms of the contract itself. The insurance policy provides: "You must notify us of any suit brought to determine legal liability or damages. Without our written consent we are not bound by any resulting judgment." We note that the consequence of failing to give notice as specified in the policy is not a bar to insured motorist claims. The result of the breach of the notice requirement, whether created by the policy itself or imposed by operation of law, turns on whether the breach is material. *See Management Computer Servs. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 157, 182, 557 N.W.2d 67, 77–78 (1996). A breach that is formulistic and without consequences to any of the parties should not be a basis to defeat a right to which the insured has negotiated and paid. *See id.*

---

[1] The reasoning and conclusion that the failure to give notice bars coverage without an inquiry into prejudice was upheld after two remands from the Michigan Supreme Court. *See Lee v. Auto-Owners Ins. Co.*, 554 N.W.2d 610 (Mich. App. 1996).

Wisconsin has addressed this issue in comparable circumstances and concluded that violations of an insured's obligation will only penalize the insured when the violation was material to the rights of the insurer. In the context of liability insurance, the failure to give notice does not bar coverage unless the insurer was prejudiced. *See* § 632.26(2), STATS. The statute provides:

> **632.26 Notice provisions. (1)** REQUIRED PROVISIONS. Every liability insurance policy shall provide:
>
> . . . .
>
> **(2)** EFFECT OF FAILURE TO GIVE NOTICE. Failure to give notice as required by the policy as modified by sub.(1)(b) does not bar liability under the policy if the insurer was not prejudiced by the failure, but the risk of nonpersuasion is upon the person claiming there was no prejudice.

Section 631.81, STATS., provides that "failure to furnish such notice or proof of loss within the time required by the policy does not invalidate or reduce a claim *unless the insurer is prejudiced thereby* and it was reasonably possible to meet the time limit." (Emphasis added.) When pursuing an action against a governmental body, the failure to comply with the notice provisions of § 893.80, STATS., places the burden on the claimant to demonstrate no prejudice resulted from the failure. *Weiss v. City of Milwaukee*, 79 Wis. 2d 213, 227, 255 N.W.2d 496, 501 (1977).

While the foregoing examples do not resolve the issue before us, they represent the public policy that favors providing insurance benefits to its insured when in fairness it is possible to do so. We must also apply

general rules of contract interpretation. An insurance policy, including an underinsurance policy, is construed in accordance with the reasonable expectation of the insured. *Matthiesen v. Continental Cas. Co.*, 193 Wis. 2d 192, 204, 532 N.W.2d 729, 733 (1995). Ambiguities in an insurance contract are to be resolved in favor of the insured. *Smith v. State Farm Fire & Cas. Co.*, 192 Wis. 2d 322, 329, 531 N.W.2d 376, 379 (Ct. App. 1995). The combination of the above rules of contract interpretation and the listed expressions of Wisconsin's public policy in other contexts is sufficient to persuade us that the broad public policy of this state is to provide insurance coverage as long as the insured's failure to perform under the terms of the insurance contract has not resulted in prejudice to the insurer.

In addition to the foregoing reasons, we note that *Vogt* closely tracked and relied upon the Minnesota Supreme Court's decision in *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn. 1983). Because the *Vogt* rule arose from a Minnesota procedure, we think it is persuasive to examine Minnesota authority as to the consequences of failing to give the required notice of settlement to an underinsurer. In *Baumann*, 459 N.W.2d at 927, the Minnesota Supreme Court concluded that the failure to give the required notice would not act as a bar unless the insurer has been prejudiced by the lack of notice. In reaching this conclusion, the court noted that Minnesota courts had been historically reluctant to forfeit insurance benefits for an insured's breach of the policy provisions without a showing of prejudice. The Minnesota Supreme Court went on to construct a procedure for a determination of prejudice and concluded that if an insured can demonstrate that no prejudice was sustained by the underinsured carrier, the failure to give

notice would not result in the forfeiture of any rights under the insurance policy.

Having concluded that prejudice is required before an insured forfeits rights under his underinsured motorist policy, it is necessary to address the question as to who has the burden of proof. Traditionally, burdens of proof have been assigned to the party advocating the exception to the rule. *Anderson v. Anderson*, 147 Wis. 2d 83, 88, 432 N.W.2d 923, 926 (Ct. App. 1988). In this case, it is the insured who is claiming that the lack of prejudice prevents coverage from being denied for failing to give the required *Vogt* notice. We also recognize that burdens of proof are sometimes assigned to the party who is in the best position to obtain or possess the evidence germane to the question to be litigated. The Ranes argue that the insurance carrier has the necessary evidence to determine whether they have been prejudiced and a rule requiring the insured to demonstrate the lack of prejudice requires proof of a negative. While these points are well made, we perceive no unique information available to the insurance carrier in regard to the question of prejudice. The effects of failing to give notice on the insurer's subrogation rights are as available to the insured as they are to the insurer. Discovery can identify the specific claims of prejudice that may be asserted and the basis upon which the insurer asserts them. As a matter of general policy, we see no specific advantage possessed by the insurance carrier in regard to the question of prejudice to abrogate the traditional rule that the burden of proof is on the person asserting the exception.

We recognize that among those states that make a finding of prejudice there is almost an equal division as

635

to whom the burden of proof is assigned. *Compare Mulholland*, 527 N.E.2d at 33, *with Stevens v. Merchants Mut. Ins. Co.*, 599 A.2d 490, 492 (N.H. 1991). We also recognize that in some states, including Minnesota, a presumption of prejudice has been adopted and that the burden is on the insured to rebut that presumption. *Baumann*, 459 N.W.2d at 926–27. We see little compelling reason to establish a presumption regarding the question of prejudice, but prefer to analyze this issue as one of fact to be resolved by the factfinder. The burden is to persuade the factfinder by a preponderance of evidence that no prejudice has been suffered as a result of the failure to give notice. The process should envision an insurance carrier asserting the affirmative defense of lack of notice having the burden of demonstrating the lack of notice. Once lack of notice has been demonstrated, the insured must produce sufficient evidence to satisfy the factfinder by a preponderance of evidence that no prejudice has been suffered by the insurer as a result of the failure to give such notice. If the insured is able to bear his burden of proof, the failure to give notice will have no affect on the rights under the insurance policy. If the insured fails to demonstrate a lack of prejudice, the failure to give notice will act as an absolute bar to underinsured motorist benefits as provided by the insurance policy.

The parties have each addressed a question whether claims preclusion is a basis for the granting of summary judgment by the trial court. This issue apparently arose because of the trial court's reference to a basis other than the question arising from the failure to give the *Vogt* notice for the granting of summary judgment. The parties agree that the posture of the case presented to the court for determination pre-

cludes any basis for the granting of summary judgment other than the issues previously addressed in this opinion. Based upon the parties' agreement, we conclude that we need not address any other basis for the trial court's summary judgment decision.

*By the Court.*—Judgment and order reversed and cause remanded.