Rhonda NEFF and Randy Neff, Plaintiffs-Appellants-Cross-Respondents-Petitioners,

v.

James PIERZINA, Wilson Mutual Insurance Company, Anton Johnson, d/b/a T.J. Doc's, West Central Mutual Insurance and David Schiesl, Defendants-Cross-Respondents,

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant-Respondent-Cross-Appellant.

Supreme Court

*No. 99–1069. Oral argument January 10, 2001.—Decided July 9, 2001.*

2001 WI 95

(Also reported in 629 N.W.2d 177.)

For the plaintiffs-appellants-cross respondents-petitioners there were briefs by *Dean R. Rohde* and *Bye, Goff & Rohde, Ltd.,* River Falls, and oral argument by *Dean R. Rohde.*

For the defendant-respondent-cross appellant there was a brief by *Beverly Wickstrom* and *Misfeldt, Richie, Wickstrom & Wachs,* Eau Claire, and oral argument by *Beverly Wickstrom.*

¶ 1. DAVID T. PROSSER, J. This case arises out of an elevator accident in Arcadia, Wisconsin, on July 8, 1996. The plaintiffs, Rhonda and Randy Neff, allege that David Schiesl was among those responsible for the accident in which Rhonda Neff suffered injuries. The Neffs contend that American Family Mutual

Insurance Company (American Family) must provide liability insurance coverage to Schiesl under a renter's policy issued to Schiesl's wife.

¶ 2. After a trial on the issue of coverage, the circuit court for Trempealeau County, John A. Damon, Judge, found that Schiesl had breached his obligation to provide American Family with timely notice of the accident and that his breach prejudiced American Family. This determination eliminated coverage. The court of appeals affirmed the circuit court's decision, and we agreed to review the court's unpublished opinion, *Neff v. Pierzina*, No. 99–1069, unpublished slip op. (Wis. Ct. App. Apr. 4, 2000).

¶ 3. The issues presented in this case are whether Schiesl breached his duty to provide American Family with timely notice that he was involved in an accident, and if he did, whether his breach of duty prejudiced the insurer. This inquiry requires us to consider the proper standard of review of a circuit court's findings that an insured did not provide timely notice to an insurer and that this breach of duty was prejudicial.

¶ 4. We conclude that the proper standard of review of a circuit court's findings relating to timely notice and prejudice is the clearly erroneous standard. In this case, the circuit court's findings regarding timely notice and prejudice are not clearly erroneous. They are supported by the pertinent evidence. Accordingly, we affirm the decision of the court of appeals.

## I. FACTUAL BACKGROUND

¶ 5. To appreciate the issues in this case, we must review the relationships among the parties and the setting of the accident because they form the basis for the Neffs' action.

¶ 6. All the people involved in this case were friends or acquaintances at time of the accident. David Schiesl, Anton "Tony" Johnson, and James Pierzina were friends and contiguous neighbors; Schiesl and Johnson were close friends.

¶ 7. The Neffs were friends of Johnson. Randy Neff is Johnson's former brother-in-law. Johnson served as the best man at the Neffs' wedding. Schiesl was acquainted with Randy Neff because of hunting parties, but he did not meet Rhonda Neff until the day of the accident.

¶ 8. At the time of the accident, Schiesl worked in association with Johnson in the used appliance sales and repair trade, in a business called T.J. Doc's Used Appliances and More (T.J. Doc's). The business was named "T.J. Doc's" by Johnson to represent his unofficial initials, "T.J.," and Schiesl's nickname, "Doc." The business was created in December 1995, and Johnson provided the investment capital for the enterprise. In addition to their T.J. Doc's association, Johnson and Schiesl worked together in a full-time capacity at Pat's Country Market in Arcadia.

¶ 9. James Pierzina owned a barn or shed-type building that was known as the "chicken coop." There was a "homemade" elevator in the chicken coop that enabled people to go up to a second floor. Pierzina rented the second floor to Johnson for $100 per month. T.J. Doc's used the second floor to store used appliances that were to be repaired or used for parts.

¶ 10. T.J. Doc's conducted business out of a "pole building" or "pole shed" that Schiesl and others helped Johnson construct on Johnson's property. The pole shed was about the size of a two-car garage and had a single overhead door much like an automobile garage. The building served not only as the home of T.J. Doc's,

but also as a place for "hanging out and watching TV, and having a few beers and talking" for Johnson and Schiesl, as well as other neighbors and friends.

¶ 11. T.J. Doc's was generally open for business from around 5:00 or 5:30 p.m. until 8:00 p.m. on all weekdays except Wednesday. In essence, T.J. Doc's was an after-work business for Johnson and Schiesl and it was never intended to yield a sizable profit.[1] In 1996 Schiesl had about $600 of income from the business.

¶ 12. Johnson rented the second floor of the chicken coop on July 1, 1996. One week later, on the day of the accident, there were about 15 to 20 appliances stored on the second floor of the building and around 30 appliances sitting in Johnson's yard.

¶ 13. At some point on July 8, Randy Neff contacted Johnson asking to borrow his truck and trailer to move some lumber. Johnson agreed. Later in the day when Randy and Rhonda Neff came to T.J. Doc's for the truck, either Johnson or Schiesl asked Neff to drive Schiesl to downtown Arcadia to pick up some appliances because Schiesl did not have a valid driver's license. Randy Neff's use of the truck was not conditioned on his escorting Schiesl to pick up the appliances, but Neff complied with the request. While Schiesl and Neff went out on this trip, Rhonda Neff stayed behind at T.J. Doc's to answer the telephone in

---

[1] Initially, Johnson and Schiesl discussed becoming partners in this business. After Johnson met with an accountant, however, the two men decided that Schiesl would operate as "an independent contractor" or a "subcontractor." Schiesl initially received a 20 percent commission on sales of refurbished appliances, but his commission later grew to 25 percent, and he also received a 50 percent commission on repair charges for appliances.

the event a customer called or to direct a customer to Johnson, who was nearby in his house fixing dinner.

¶ 14. When Randy Neff and Schiesl returned from their mission to pick up appliances, Schiesl began putting the appliances in the chicken coop. One by one, Schiesl took each appliance up the elevator to the second floor. Randy Neff assisted by unloading two appliances from the truck while Schiesl took the first appliance into the chicken coop and up the elevator. Schiesl indicated that it took him about 15 minutes to put all three appliances in the coop. When Schiesl returned from putting the last appliance on the second floor, the Neffs were in the vicinity of the door of the coop. Schiesl offered to take them up the elevator to see the coop. The Neffs did not ask to see the coop but they accepted the invitation.

¶ 15. The three people boarded the elevator. Randy Neff went up in the elevator to see the chicken coop out of curiosity. Rhonda Neff testified that she went up with her husband and Schiesl to be "nice." Schiesl had been admonished not to take anyone in the elevator to the second floor except Johnson or Pierzina.

¶ 16. When the elevator was nearing the top of its ascent—within an inch of the second floor, according to Schiesl—a cable on the elevator broke and the elevator crashed to the ground. Schiesl raced to get Johnson from his house and Johnson called 911 for emergency help. Rhonda Neff suffered injuries, including a broken ankle, in the fall. Schiesl also suffered very minor injuries in the fall.

¶ 17. At the time of the accident, Schiesl had liability coverage from his renter's policy with American Family, although he did not know it and never checked. Johnson had liability coverage through a policy he purchased from West Central Mutual Insurance (West

Central). Pierzina had liability coverage through a policy he purchased from Wilson Mutual Insurance Company (Wilson Mutual).

¶ 18. On January 23, 1997, more than six months after the accident, the adjusting service for West Central, Johnson's insurer, retained a claims service to investigate the accident. Six days later, an investigator named Clarence Eyers met with Pierzina, Johnson, and Schiesl. Eyers took recorded statements in separate areas from each of the three men. Eyers said at the coverage trial that all three witnesses were "very cooperative." He did not interview the Neffs.[2]

¶ 19. Eyers also took pictures of the scene of the accident, including the area of the elevator and the elevator itself. He did not ascend to the second floor of the chicken coop or take pictures there because the elevator remained inoperable. He did not take pictures of the T.J. Doc's shop, although he did go into the shop. In his witness interviews, Eyers did not delve very deep into the facts surrounding the business relationship between Schiesl and Johnson. Eyers nevertheless testified that he believed he conducted a complete investigation.

## II. LITIGATION HISTORY

¶ 20. The Neffs commenced suit for Rhonda Neff's personal injuries on July 29, 1997—a little more than a year after the accident. The Neffs named Pierzina (owner of the chicken coop) and his insurer, Wilson Mutual, and Johnson and his insurer, West

---

[2] The parties stipulated, however, that the Neffs would not have been available for an interview with Eyers because they were represented by counsel.

Central, as defendants in the suit. Schiesl was not initially named as a defendant.

¶ 21. In December 1997 Schiesl appeared for a deposition to which he was subpoenaed. He did not have counsel. The attorneys present agreed to delay Schiesl's deposition until he had the chance to hire a lawyer.

¶ 22. After conducting some discovery, the Neffs filed an amended complaint on February 27, 1998, naming Schiesl as a defendant. In March 1998 West Central provided Schiesl with an attorney to defend him on the merits but it reserved its coverage defenses.

¶ 23. The attorney provided by West Central represented Schiesl at a May 4, 1998, deposition. About this time, the Neffs learned that Schiesl had liability coverage at the time of the accident through Schiesl's renter's insurance. The American Family policy was for Schiesl's residence and was not associated with or purchased by T.J. Doc's or Johnson.

¶ 24. On June 3, 1998, the Neffs filed a second amended complaint, which added Schiesl's insurer, American Family, as a defendant.

¶ 25. The accident at issue occurred on July 8, 1996. American Family did not receive notice that its insured, Schiesl, was involved in the accident until it received the Neffs' second amended complaint, on or about June 3, 1998. It did not discuss the matter with Schiesl until June 10, 1998. This was 23 months after the accident. Schiesl later testified that (1) he considered himself a victim of the accident and (2) once he was named as a defendant in the suit, he believed he was insured by T.J. Doc's insurance policy with West Central.

¶ 26. American Family raised coverage defenses. These included (1) the assertion that it was prejudiced

by Schiesl's failure to provide the insurer with timely notice of the accident and (2) the business pursuits exclusion in the renter's policy precluded coverage. The Neffs' assertion that the American Family policy provides coverage to Schiesl, and American Family's defense that Schiesl's untimely notice resulted in prejudice, are the substance of this appeal.

¶ 27. On January 25, 1999, Judge Damon conducted a coverage trial to the court, which included numerous issues and defendants.[3] The circuit court found that Schiesl's act of taking the Neffs into the elevator of the chicken coop was an insured event under Schiesl's policy with American Family. The court ruled that Schiesl's actions did not come within the business pursuits exclusion of Schiesl's policy because Schiesl was not conducting business when he showed the chicken coop to the Neffs. However, the circuit court found that Schiesl failed to give American Family timely notice of the accident and that American Family was prejudiced by Schiesl's failure to do so.

¶ 28. The Neffs appealed to the court of appeals. In an unpublished opinion, the court of appeals affirmed the decision of the circuit court on the issue of untimely notice to American Family. The court of appeals noted that there is inconsistency in the case law regarding the standard of review on the issue of prejudice from failing to provide timely notice to an insurer. However, the court did not resolve the inconsistency because it found that an affirmance of the

---

[3] The circuit court previously conducted a coverage trial involving Pierzina's insurer, Wilson Mutual. The court reformed Pierzina's policy with Wilson Mutual to provide coverage to Pierzina. None of the issues relating to Wilson Mutual and its duty to provide coverage to Pierzina is before us in this case.

circuit court's ruling was appropriate regardless of whether it deferred to the circuit court's findings or decided the issue de novo.[4]

## III. ANALYSIS

### A. General Principles

¶ 29. An insured is required to give timely notice to his or her insurer. *Kolbeck v. Rural Mut. Ins. Co.*, 70 Wis. 2d 655, 659, 235 N.W.2d 466 (1975); *Gerrard Realty Corp. v. Am. States Ins. Co.*, 89 Wis. 2d 130, 140, 277 N.W.2d 863 (1979). This principle is reflected in Schiesl's renter's policy which required a person claiming coverage to "give prompt notice" of an accident or occurrence to the insurer and to "promptly forward" any notice, demand, or legal paper relating to the accident or occurrence.[5]

---

[4] The issue of whether Schiesl was engaged in a business pursuit when he took the Neffs up in the elevator is not before this court. When the Neffs appealed the circuit court's ruling concerning Schiesl's failure to provide timely notice to American Family, American Family cross-appealed the decision of the circuit court regarding the business pursuits exclusion. The court of appeals did not address this issue, however, because it affirmed the circuit court's ruling that American Family was prejudiced by untimely notice. Because we affirm the decision of the circuit court regarding notice, there is no need for resolution of any matters regarding the business pursuits exclusion.

The circuit court also ruled that Johnson's policy with West Central did not provide coverage for Schiesl with regard to the claims of the Neffs because Schiesl was not an employee of Johnson.

[5] The American Family policy reads in part:

CONDITIONS – SECTION II

¶ 30. Two notice provisions are also included in the Wisconsin Statutes. Wis. Stat. §§ 631.81 and 632.26 (1997–98).[6] These statutes govern the notice provisions in Wisconsin insurance policies and set out the rights and duties of the insured and the insurer.

¶ 31. Wisconsin Stat. § 631.81 is entitled "Notice and proof of loss." Subsection (1) reads:

> TIMELINESS OF NOTICE. Provided notice or proof of loss is furnished as soon as reasonably possible and within one year after the time it was required by the policy, failure to furnish such notice or proof within the time required by the policy does not invalidate or reduce a claim unless the insurer is prejudiced thereby and it was reasonably possible to meet the time limit.

¶ 32. Wisconsin Stat. § 632.26 is entitled "Notice provisions." Subsection (1)(b) provides:

> That failure to give any notice required by the policy within the time specified does not invalidate

----

. . . .

7. What You Must Do in Case of Loss. In the event of an accident or occurrence which this insurance may cover, you and any person claiming coverage under this policy must:

a. give prompt notice to us or our agent, including:
 (1) the identity of the policy and insured;
 (2) the time, place and circumstances of the accident or occurrence;
 (3) names and addresses of any claimants and witnesses; and
 (4) as often as we reasonably require, let us record your statements and submit to examinations under oath by any person named by us, while not in the presence of any insured, and sign the transcript of the statements and examinations.

b. promptly forward to us any notice, demand or legal paper relating to the accident or occurrence.

[6] All references to the Wisconsin Statutes refer to the 1997–98 volumes unless otherwise noted.

a claim made by the insured if the insured shows that it was not reasonably possible to give the notice within the prescribed time and that notice was given as soon as reasonably possible.

Subsection (2) then provides:

EFFECT OF FAILURE TO GIVE NOTICE. Failure to give notice as required by the policy as modified by sub. (1)(b) does not bar liability under the policy *if the insurer was not prejudiced by the failure*, but the risk of nonpersuasion is upon the person claiming there was no prejudice (emphasis added).

¶ 33. At the coverage trial on January 25, 1999, Judge Damon sat as the trier of fact. He answered certain questions, including Question 5, which read: "Was American Family prejudiced by the late notice of the accident?" He answered the question "yes." Thereafter, Judge Damon made the following conclusions:

4. The policy of American Family Insurance issued to David Schiesl required David Schiesl to provide *notice of the accident and notice of the lawsuit.*

5. David Schiesl breached his obligation to provide notice of the accident and notice of the lawsuit, and American Family was prejudiced as a result of said breach.

6. The American Family Mutual Insurance Company policy issued to David Schiesl does not provide insurance coverage for the claims of the plaintiffs.

B. Standards of Review

¶ 34. We begin our analysis by discussing the standards to apply in reviewing the circuit court's

determinations on timely notice and prejudice to the insurer.

¶ 35. On the first question—whether notice to the insurer was timely—the Neffs more or less concede that the timeliness of notice is a question of fact subject to the clearly erroneous standard of review.[7] In *Ehlers v. Colonial Penn Insurance Co.*, the court explained:

> [T]his determination is essentially one of fact which is to be based not merely on the passage of time but upon all the facts and circumstances of the particular case. Therefore, when a party appeals a determination of this nature, this court has traditionally applied two rules: (1) that the weight to be given testimony and the credibility of the witnesses is for the trier of facts, in this instance the trial court; and (2) the findings of the trier of fact must be sustained unless they are against the great weight and clear preponderance of the evidence.

81 Wis. 2d 64, 67–68, 259 N.W.2d 718 (1977) (citations omitted).

¶ 36. The insurer has the burden to show that notice was not timely. *Resseguie v. Am. Mut. Liab. Ins. Co.*, 51 Wis. 2d 92, 104, 186 N.W.2d 236 (1971). To make its case, the insurer must come forward with evidence that the insured has not complied with the

---

[7] The clearly erroneous standard is the modern equivalent of the "great weight and clear preponderance of the evidence" standard. *Noll v. Dimicell's, Inc.*, 115 Wis. 2d 641, 643, 340 N.W.2d 575 (Ct. App. 1983), *cited in* Michael S. Heffernan, *Appellate Practice and Procedure in Wisconsin* § 3.5a (2d ed. 1995). The change in terminology occurred when this court promulgated a new civil procedure code in 1975. Heffernan, *supra*, at § 3.5a.

notice requirements of the policy. This evidence may not be dispositive, however, if the insured is able to satisfy either of two conditions.

■

¶ 37. First, the insured does not have a duty to report "unless he [or she] has reasonable grounds to believe that he [or she] is a participant in an accident." *Kolbeck*, 70 Wis. 2d at 659. As a result, an insured's duty to notify may not arise at the same time as the accident or occurrence. Under certain circumstances, the duty to give notice may arise later. Thus, an insured has a duty to report to the insurer "as soon as reasonably possible" after the accident or occurrence, or "as soon as reasonably possible" after the time the insured has reasonable grounds to believe that he or she is a participant in an accident or occurrence, whichever is later. *Id.*

¶ 38. Second, under Wis. Stat. § 632.26(1)(b), the insured may show that (1) it was not reasonably possible to give the notice within the prescribed time and (2) notice *was* given as soon as reasonably possible.

¶ 39. These are all factual determinations and the circuit court's decision will be upheld unless the determinations are clearly erroneous.

■

¶ 40. There may be some circumstances in which no judge or jury could reasonably find that notice was timely, or conversely, untimely. *RTE Corp. v. Md. Cas. Co.*, 74 Wis. 2d 614, 629, 247 N.W.2d 171 (1976). However, we view the question of timely notice as essentially a fact question, and an appellate court should not substitute its judgment for that of the fact finder unless the finding is "contrary to the great weight and clear preponderance of the evidence." *State*

*v. Thomas*, 2000 WI 13, ¶ 13 n.7, 232 Wis. 2d 714, 605 N.W.2d 836.

¶ 41. On the second question—whether the insurer was prejudiced by late notice—the parties disagree about the standard to be applied.

¶ 42. When a determination has been made that the insured's notice to the insurer was untimely, the court must decide whether the insurer was prejudiced by the insured's breach of duty. Under Wis. Stat. § 632.26(2), late notice is not prejudicial per se, "but the risk of nonpersuasion is upon the person claiming there was no prejudice."

■

¶ 43. The decisions interpreting Wis. Stat. § 631.81(1) hold that when the insured fails to give notice within one year after the time required by the policy, "there is a rebuttable presumption of prejudice and the burden of proof shifts to the claimant to prove that the insurer was not prejudiced by the untimely notice." *Gerrard Realty*, 89 Wis. 2d at 146–47.

■

¶ 44. Prejudice to the insurer in this context is a serious impairment of the insurer's ability to investigate, evaluate, or settle a claim, determine coverage, or present an effective defense, resulting from the unexcused failure of the insured to provide timely notice. Whether an insurer has been prejudiced is governed by the facts and circumstances in each case. As the court said in *Rentmeester v. Wisconsin Lawyers Mutual Insurance Co.*, 164 Wis. 2d 1, 8–9, 473 N.W.2d 160 (Ct. App. 1991) (citing Wis. Stat. § 805.17(2)), "[W]e will uphold the trial court's factual determinations underlying the question of prejudice unless clearly erroneous."

¶ 45. The process for determining prejudice was discussed by the court of appeals in *Ranes v. American Family Mutual Insurance Co.*, 212 Wis. 2d 626, 569 N.W.2d 359 (Ct. App. 1997), *aff'd*, 219 Wis. 2d 49, 580 N.W.2d 197 (1998). The court explained that, in the absence of timely notice, the insured has the burden of proving the insurer's lack of prejudice. The court acknowledged that the burden of proof is sometimes "assigned to the party who is in the best position to obtain or possess the evidence germane to the question to be litigated." *Ranes*, 212 Wis. 2d at 635. However, "[t]he effects of failing to give notice on [the insurer] are as available to the insured as they are to the insurer." *Id.*

> Discovery can identify the specific claims of prejudice that may be asserted and the basis upon which the insurer asserts them. As a matter of general policy, we see no specific advantage possessed by the insurance carrier in regard to the question of prejudice to abrogate the traditional rule that the burden of proof is on the person asserting the exception.
> . . .Once lack of notice has been demonstrated, *the insured must produce sufficient evidence to satisfy the factfinder by a preponderance of the evidence that no prejudice has been suffered* by the insurer as a result of the failure to give such notice.

*Id.* at 635–36 (emphasis added).

¶ 46. This court affirmed the court of appeals decision in *Ranes v. American Family Mutual Insurance Co.*, 219 Wis. 2d 49, 580 N.W.2d 197 (1998). We concluded that "[r]ecognizing a presumption of prejudice and placing the burden to rebut the presump-

tion on an insured take into account the rights and responsibilities of both the [insurer] and the insured." 219 Wis. 2d at 61–62.

¶ 47. This discussion confirms that the determination whether an insurer has been prejudiced by the lack of timely notice is essentially a question of fact. The fact finder's determination should not be set aside unless it is clearly erroneous. Wis. Stat. § 805.17(2). Wisconsin Stat. § 632.26(2) states that "the risk of non-persuasion is upon the person claiming there was no prejudice." This statement signals a factual determination.

¶ 48. Our conclusion on this question is consistent with *Couch on Insurance*. "Generally, whether a liability insurer has been prejudiced by late notice is considered a question of fact, but may be determined as [a] matter of law where facts are not in dispute." Lee R. Russ & Thomas F. Segalla, 13 *Couch on Insurance 3d* § 193:31 (1999) (footnotes omitted).

C. Timeliness of Notice

¶ 49. Our task now is to apply the standard of review to the facts of the case. The accident occurred on July 8, 1996. American Family learned about the accident on or about June 3, 1998, when it received the second amended complaint naming it as a defendant. The time lapse was 23 months.

¶ 50. David Schiesl's renter's policy contained language requiring "prompt notice" in the event of an accident that might lead to coverage. The policy required the insured to provide information about the time, place, and circumstances of the accident, as well as the names and addresses of claimants and witnesses. It required the insured's cooperation in recording statements, including examinations under

oath, and assistance in negotiating settlements. It required the insured to "promptly forward" any notice, demand, or legal paper relating to the accident.

¶ 51. After hearing testimony from Schiesl, Johnson, Pierzina, Rhonda Neff, Randy Neff, and the investigator, Eyers, the circuit court concluded that Schiesl failed to provide American Family with timely notice.

¶ 52. The circuit court found that Schiesl should have known "that he might have some trouble" as a result of the accident. The circuit court was not swayed by the argument that the one-year period to provide notice without a presumption of prejudice should have begun on the day Schiesl received a complaint naming him as a defendant. Schiesl knew that he was not supposed to take anyone up in the elevator to the second floor of the chicken coop. Schiesl alone operated the elevator with the Neffs aboard. It was not clearly erroneous for the circuit court to find that Schiesl should have known "that he might have some trouble" as a result of the accident.

¶ 53. Even if the circuit court had accepted his argument that he had no duty to inform American Family until he was named in the lawsuit in February 1998, Schiesl himself did not provide notice to American Family, and American Family did not receive notice until the Neffs sued the insurer in June 1998. This exacerbated an already delayed situation.

¶ 54. The circuit court's finding of untimeliness was not clearly erroneous. An appellate court could not set aside this finding of fact on grounds that it was against the great weight or clear preponderance of the evidence. *Compton v. Shopko Stores, Inc.*, 93 Wis. 2d 613, 616, 287 N.W.2d 720 (1980).

¶ 55. We conclude that the circuit court did not err in finding that David Schiesl did not provide timely notice to American Family.

D. Prejudice

¶ 56. We turn now to the issue of prejudice. Was American Family prejudiced by the failure of the insured to provide timely notice? The circuit court found that it was.

¶ 57. The Neffs contend that "as a matter of law American Family was not prejudiced by the late notice." They claim that American Family received "the full benefit of a complete and timely investigation of the accident and its ability to defend or settle the case has not been impaired."

¶ 58. Schiesl's failure to provide timely notice within one year of the accident created a presumption that American Family was prejudiced by the lack of notice. *Gerrard Realty*, 89 Wis. 2d at 146–47 (interpreting Wis. Stat. § 631.81). Even if there were no presumption, "the risk of nonpersuasion is upon the person claiming there was no prejudice," which in this case is Schiesl. Wis. Stat. § 632.26(2). As we discussed above, we will uphold the circuit court's finding that American Family was prejudiced by the untimely notice unless it is clearly erroneous.

¶ 59. Insurers want timely notice so that they can investigate the circumstances of an accident, contact the witnesses while they are still available and before their recollection of events is forgotten or distorted, and locate unknown witnesses. *Ehlers*, 81 Wis. 2d at 67 (citing *Resseguie*, 51 Wis. 2d at 100). The ability to conduct an investigation can be impaired

305

when witnesses are no longer available or when witnesses become entrenched in a position because they have calculated the legal effect of their answers. Sometimes, as here, relationships among parties and witnesses change, memories fade, and records are lost.

¶ 60. Often the insurer has a duty not only to indemnify but also to defend the insured. The insurer ought to have some latitude in securing the investigator and attorney of its choice, provided that its choice does not compromise the interest of the insured.[8]

¶ 61. An insurer has the right to limit its liability by the terms of the contract. *Resseguie*, 51 Wis. 2d at 101. Two ways to limit liability are to permit the insurer to determine its coverage responsibility promptly, and to enable its adjusters to pay without suit. *Hiles v. Hanover Fire Ins. Co.*, 65 Wis. 585, 591, 27 N.W. 348 (1886). The failure to provide timely notice may impede the determination of coverage and impair the ability to settle the case.

¶ 62. The Neffs rely heavily on the investigation by Eyers for the proposition that American Family was not prejudiced by the delay in notice. They argue that American Family received the full benefit of a complete and timely investigation and was able to defend or settle the case without real difficulty.

---

[8] The principle involved is well stated in a different context in *Penson v. Ohio*, 488 U.S. 75, 86–87 (1988), where the Supreme Court declared: "One party's right to representation. . .is not satisfied by simply relying on representation provided to another party. . . . A [party] is entitled to single-minded advocacy for which the mere possibility of a coincidence of interest with a represented codefendant is an inadequate proxy."

¶ 63. American Family disagrees. It contends that Eyers' "investigation did not delve deeply enough into facts relevant to Schiesl's liability, and did not address, in any way, the factors necessary to determine whether American Family's exclusions were applicable." It also argues that Eyers "did not do many things [American Family] likely would have done had it been given the opportunity to investigate the accident." American Family asserts that Eyers engaged the main participants only in brief interviews, did not ask Pierzina or Johnson about rules regarding use of the coop or elevator, did not go up to the second floor of the coop or photograph that area, did not photograph the T.J. Doc's shop, and was unable to determine how the accident occurred—that is, *why* the cable broke.

¶ 64. Finally, American Family points out that Eyers' purpose in conducting the investigation for West Central did not coincide with its needs in investigating the accident. Once Eyers determined that Schiesl was not an employee of T.J. Doc's or Johnson, Eyers had no reason to probe further into the details of the accident because West Central did not have to provide coverage to Schiesl if there were no employer-employee relationship.

¶ 65. Eyers conducted his interviews on January 29, 1997, more than 200 days after the accident. The Neffs filed suit exactly six months later. Had Schiesl notified American Family promptly, he could have received assistance before he was interviewed by Eyers. American Family could have had six months after the interview to settle with the Neffs before *any* suit was filed. The insurer could have had another seven months after suit was filed before Schiesl was named as a defendant and approximately 22 months to assist him before his deposition was taken.

307

¶ 66. The Neffs make good arguments that Eyers' investigation was sufficient to protect American Family's interests. They contend that the investigation by Eyers was done at a time when the witnesses' memories were fresh. They assert that American Family received a complete and timely investigation file with information that was complete and accurate. Finally, they argue that American Family had the opportunity to view the unfixed elevator once it became a party to the lawsuit but chose not to do so.

¶ 67. Nonetheless, we cannot conclude that the circuit court was clearly erroneous in finding that American Family was prejudiced by the delay. Because prejudice to the insurer is often difficult to prove, the insurer is aided by a presumption of prejudice when notice is not given within one year. *Ranes*, 219 Wis. 2d at 62. The circuit court was not persuaded that Schiesl had overcome this presumption of prejudice. It found prejudice, and its finding may not be overturned on this record.

## IV. CONCLUSION

¶ 68. In summary, we conclude that the clearly erroneous standard is the proper standard of review of the circuit court's findings relating to both timely notice and prejudice. In this case, the circuit court's findings regarding timely notice and prejudice are not clearly erroneous. They are supported by the pertinent facts. The presumption that American Family was prejudiced by not receiving timely notice 23 months after the accident has not been overcome. Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.