In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 07-3367

GUARANTY BANK,

*Plaintiff-Appellant*,

*v.*

CHUBB CORPORATION, *et al.*,

*Defendants-Appellees*.

_____

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 05-C-1301—**Rudolph T. Randa**, *Chief Judge*.

_____

ARGUED APRIL 9, 2008—DECIDED JULY 17, 2008

_____

Before POSNER, RIPPLE, and MANION, *Circuit Judges*.

POSNER, *Circuit Judge*. The plaintiff in this diversity suit governed by Wisconsin law, Guaranty Bank, appeals from the grant of summary judgment in favor of the defendant, Great Northern Insurance Company. (The plaintiff is no longer seeking relief against the other two defendants, affiliates of Great Northern, and we shall ignore them.) Great Northern had issued a liability insurance policy to Guaranty Bank that covered "advertising injury," but refused to defend the bank against a suit by Midwest Guaranty Bank, and that refusal, the

bank argues, was a breach of the duty to defend created by the policy.

Midwest's suit, filed in a federal district court in Michigan, complained that Guaranty Bank had "publicly announced its intent to enter the same geographic market as Midwest Guaranty Bank under the name GUARANTY BANK" and that the use of such a similar name "create[s] a likelihood of confusion among Midwest Guaranty Bank's customers and others as to the source of Guaranty Bank's financial services and products, as well as the financial services and products of Midwest Guaranty Bank," and indeed actual confusion, all in violation of federal and Michigan unfair competition law, including Michigan's common law of trademark infringement. The suit sought both injunctive relief and damages.

The suit was filed toward the end of November 2002, and on June 5 of the following year the district court in Michigan issued a preliminary injunction forbidding Guaranty Bank to use its name in conjunction with the sale of banking and related financial services in southern Michigan. Six days later Guaranty Bank notified Great Northern Insurance Company of the suit and asked it to defend. Great Northern refused. Two and a half months later, Guaranty Bank settled Midwest's suit for $200,000. Besides having to pay Midwest the amount of the settlement, Guaranty Bank incurred some $150,000 in attorneys' fees, almost 90 percent of them before tendering the defense of the suit to Great Northern. Its suit against Great Northern seeks both the attorneys' fees and the amount of the settlement, the latter on the theory that by failing to defend, Great Northern should be estopped (forbidden) to deny coverage. That theory is essential to Guaranty Bank's claim for the amount of the settlement (as

distinct from its attorneys' fees), because we shall see at the end of this opinion that the conduct that Guaranty Bank was sued for engaging in was not covered by the policy.

The policy required the insured to notify the insurer "immediately" of a claim for which a defense was sought; yet for unexplained reasons Guaranty Bank had waited more than six months to notify Great Northern of Midwest Guaranty Bank's suit. Wisconsin law provides that "if the insured shows that it was not reasonably possible to give the notice within the prescribed time and that notice was given as soon as reasonably possible," the failure to give notice within the time limit fixed by the policy does not invalidate the insured's claim. Wis. Stat. § 632.26(1)(b). Even if, as in this case, the insured delays unreasonably in giving notice, the delay still does not terminate the insurer's duties under the policy "if the insurer was not prejudiced by the failure, but the risk of nonpersuasion is upon the [insured]," *id.*, § 632.26(2), which in this case was Guaranty Bank, on which, therefore, the district judge placed the burden of proof.

We think the judge was right to do that, though analysis is a bit complicated by the existence of another provision of Wisconsin law, Wis. Stat. § 631.81(1), which provides that if notice of a claim is given to the insurer within a year after the claim arose, as it was in this case, the claim is not invalid (whatever the policy says) "unless the insurer is prejudiced thereby." In *Gerrard Realty Corp. v. American States Ins. Co.*, 277 N.W.2d 863, 872 (Wis. 1979), the Wisconsin Supreme Court said this provision meant "that an insured's notice is not deemed untimely and precluding recovery against the policy if the notice is furnished as soon as reasonably possible

within one year of the time notice is required by the terms of the insurance policy, *and the insurer is unable to prove prejudice* or that it was possible to give notice within the time limit required in the policy" (emphasis added). See also *Zenith Ins. Co. v. Employers Ins. of Wausau*, 141 F.3d 300, 307-08 (7th Cir. 1998); *Lopardo v. Fleming Cos.*, 97 F.3d 921, 927 (7th Cir. 1996); 2 Arnold P. Anderson, *Wisconsin Insurance Law* § 12.13 (5th ed. 2004).

The clause that we have italicized, which shifts the burden of proof on the issue of prejudice to the insurer, could be questioned. There is nothing in section 631.81(1), upon which the court relied, about burden of proof. The burden of proof is given in section 632.26(2), which does not suggest that the requirements that it imposes are affected by whether notice was given as soon as reasonably possible within a year.

We are bound by the Wisconsin Supreme Court's interpretation of Wisconsin law, whether we think it right or wrong. And although the burden-shifting statement that we quoted from *Gerrard* is a dictum because the notice of claim in that case had been given more than a year after the policy required that it be given, it is quoted approvingly by the Wisconsin Supreme Court in a much later case, *Neff v. Pierzina*, 629 N.W.2d 177, 186 (Wis. 2001), and as far as we can determine has not been questioned. The dictum in *Gerrard* contains an important qualification, however: the burden of proof on the issue of prejudice shifts to the insurer only if "notice [of the claim] is furnished [by the insured to the insurer] *as soon as reasonably possible* within one year." 277 N.W.2d at 872 (emphasis added); *Neff v. Pierzina*, *supra*, 629 N.W.2d at 184-85, 187. In such a case, the insured is faultless, so that shifting the burden of proving prejudice to the insurer makes a certain amount of sense and so perhaps does

permissible violence to the statutory text. This cannot help the insured in the present case, however, because it failed to notify the insurer "as soon as reasonably possible."

But suppose we are wrong in our reading of *Gerrard*, and the burden of proving prejudice was on the insurance company, contrary to what the district court thought and we think. A misallocation of the burden of proof can invalidate a grant of summary judgment, if for example the basis for the grant was that the other party had the burden of proof but had failed to present any evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 959 (7th Cir. 1989). Great Northern presented no evidence that its ability to defend Guaranty Bank against Midwest Guaranty Bank's suit was impaired by the late notice of the suit. But a court is of course entitled to take judicial notice of judicial proceedings, in this case the proceedings in Midwest's suit. Those proceedings include the preliminary injunction that the federal district court in Michigan issued before Guaranty Bank had gotten around to notifying Great Northern of the suit. Although the findings made by the judge in granting the preliminary injunction would of course not bind the jury when the case was tried on the merits, the injunction would create momentum in favor of the plaintiff and up its settlement demands, increasing the cost of defending the suit, since that cost rises with the stakes. So clear is this that no reasonable jury could find that Great Northern was not prejudiced by Guaranty Bank's inexplicable failure to give prompt notice. *RTE Corp. v. Maryland Casualty Co.*, 247 N.W.2d 171, 178-79 (Wis. 1976), and cases cited there; *Sanderfoot v. Sherry Motors, Inc.*, 147 N.W.2d 255, 259 (Wis. 1967).

Moreover, the lenity that the Wisconsin legislature and supreme court display toward insureds who miss notice deadlines in their insurance policies is designed for the protection of individuals rather than substantial commercial enterprises. Insurance policies tend to be opaque, and an individual hit with a lawsuit for the first time may be confused about how to proceed. But when a sophisticated business fails to give timely notice of suit to its insurance company, the likeliest reason is not confusion but that the business thought its exposure trivial and feared that bringing the insurance company into the picture would result in higher premiums when it bought its next policy. A sophisticated insured might also delay notifying its insurance company in order to keep control of the defense, spending generously for counsel on the insurer's dime even though the insurer might be able to defend the suit more cheaply. Many courts nowadays relax the rule of *contra proferentum* (the rule that ambiguities in a written contract are to be resolved against the party that drafted the contract), even in insurance contracts, when the parties are commercially sophisticated. E.g., *Farmers Automobile Ins. Ass'n v. St. Paul Mercury Ins. Co.*, 482 F.3d 976, 977-78 (7th Cir. 2007); *First State Underwriters Agency of New England Reinsurance Corp. v. Travelers Ins. Co.*, 803 F.2d 1308, 1311-12 (3d Cir. 1986); *F.S. Smithers & Co. v. Federal Ins. Co.*, 631 F.2d 1364, 1368 (9th Cir. 1980); *Eagle Leasing Corp. v. Hartford Fire Ins. Co.*, 540 F.2d 1257, 1261 and n. 4 (5th Cir. 1976); 1 Barry R. Ostrager & Thomas R. Newman, *Handbook on Insurance Coverage Disputes* § 1.03[c], p. 34 (11th ed. 2002); David S. Miller, Note, "Insurance as Contract: The Argument for Abandoning the Ambiguity Doctrine," 88 *Colum. L. Rev.* 1849, 1857-60 (1988); cf. *First National Bank of Manitowoc v. Cincinnati Ins. Co.*, 485 F.3d 971, 976-77 (7th Cir. 2007) (Wisconsin

law); see generally *Beanstalk Group, Inc. v. AM General Corp.*, 283 F.3d 856, 858-59 (7th Cir. 2002). Wisconsin appears to be moving in this direction, *State Bank of Viroqua v. Capitol Indemnity Corp.*, 214 N.W.2d 42, 42 n. 1 (Wis. 1974); *Tri City National Bank v. Federal Ins. Co.*, 674 N.W.2d 617, 621 (Wis. App. 2003), though how far and how fast are uncertain. *Zenith Ins. Co. v. Employers Ins. of Wausau*, *supra*, 141 F.3d at 304-05. The state's supreme court has not spoken to the issue.

Guaranty Bank argues that regardless of the burden of proof there could have been no prejudice because Great Northern, by arguing in the alternative that it would have had no duty to defend even if it had received prompt notice of Midwest Guaranty Bank's lawsuit, has admitted that the delay in notice did not affect its behavior, and unless a delay affects the insurer's behavior it cannot harm ("prejudice") him. If there was no duty to defend, Great Northern is off the hook regardless of the adequacy of notice, and we shall consider that possibility in a moment. But if it had a duty to defend, then even though it denies that now, it might have decided to defend the case had Guaranty Bank tendered the defense in a timely manner. The consequences to an insurer of a mistaken refusal to defend can be very grave because the consequences for the insured of such a refusal can be very grave. The insured will have to go and find himself a lawyer. He may not find one, or he may have only enough information about the legal services market, and money to spend on the lawsuit, to be able to hire a weak lawyer. So he may lose (or lose worse) a case that a lawyer hired by the insurance company would have won—and the facts determined in that case may make it impossible for him to establish coverage;

for example, the court may have found deliberate wrong-doing on his part, taking him out of the policy's coverage. Therefore, "if the lack of a defender causes the insured to throw in the towel in the suit against it, the insurer may find itself obligated to pay the entire resulting judgment or settlement even if it can prove lack of coverage. That is what happened in *Newhouse by Skow v. Citizens Security Mutual Ins. Co.,* 176 Wis. 2d 824, 501 N.W.2d 1 (1993), and is the reason why an insurance company that wants to avoid liability for breach of the duty to defend will often seek a declaratory judgment of noncoverage, to negate any inference of arguable coverage and hence of a duty to defend, before the company has to decide whether to accept the tender of the defense." *Hamlin Inc. v. Hartford Accident & Indemnity Co.*, 86 F.3d 93, 94 (7th Cir. 1996) (Wisconsin law).

Some states go so far as to estop the insurer to deny coverage if he breaches his duty to defend, 1 Barry R. Ostrager & Thomas R. Newman, *Handbook on Insurance Coverage Disputes* § 2.05[c], p. 78-79 (11th ed. 2002), so that the insured prevails even if he could not have established coverage had he had the world's best lawyer. Wisconsin may be one of these states, *Carney v. Village of Darien*, 60 F.3d 1273, 1277 (7th Cir. 1995) (Wisconsin law); *Radke v. Fireman's Fund Ins. Co.*, 577 N.W.2d 366, 369-70 (Wis. App. 1998); *Kenefick v. Hitchcock*, 522 N.W.2d 261, 266 (Wis. App. 1994); *Grube v. Daun*, 496 N.W.2d 106, 123 (Wis. App. 1992); *Professional Office Buildings, Inc. v. Royal Indemnity Co.*, 427 N.W.2d 427, 431 (Wis. App. 1988), though we expressed doubt in *Hamlin Inc. v. Hartford Accident & Indemnity Co.*, *supra*, 86 F.3d at 94-95; see also *Production Stamping Corp. v. Maryland Casualty Co.*, 544 N.W.2d 584, 586, 588 (Wis. App. 1996). Given the poten-

tially harsh sanction for refusing to defend, Great Northern might have agreed to defend the case had it received prompt notice. It might have thought, and might have been right to think, that it could negotiate a prompt settlement, modest in amount, at a minimal expense in attorneys' fees.

We are also persuaded by Great Northern's alternative ground for the dismissal of the lawsuit—that there was no duty to defend because there wasn't even arguable coverage of Guaranty Bank's liability to Midwest Guaranty Bank. The insurance policy, so far as bears on this case, defines an "advertising injury" as an injury "caused by an offense of infringing, in that particular part of your advertisement about your goods, products or services, upon their [the victims'] . . . registered collective mark, registered service mark or other registered trademarked name, slogan, symbol or title." There is an express exclusion for advertising injury to "any intellectual property law or right" "other than one described in the definition of advertising injury"—that is, other than (so far as relates to this case) a registered trademark. So unless Midwest Guaranty Bank was suing for infringement of a registered trademark, any damages it obtained would not be covered by Great Northern's policy.

Guaranty Bank points out that in determining duty to defend, we are just to lay the complaint alongside the insurance policy and see whether it is *possible* that the complaint is alleging an injury that the policy covers. *Fireman's Fund Ins. Co. v. Bradley Corp.*, 660 N.W.2d 666, 673 (Wis. 2003); *Doyle v. Engelke*, 580 N.W.2d 245, 285 n. 3 (Wis. 1998); *Elliott v. Donahue*, 485 N.W.2d 403, 407 (Wis. 1992); *Carney v. Village of Darien*, *supra*, 60 F.3d at 1277; 2 Anderson, *supra*, § 7.22, pp. 14-15. Otherwise the duty to de-

fend would often be empty. The insurance company could refuse to defend in the hope that the facts as they emerged in the litigation that its insured had asked it to defend would reveal that there was no coverage. The *reductio ad absurdum* would be a rule that the duty to defend is not violated whenever an insured wins his lawsuit, regardless of how much he had spent to win it, since if he won, this must mean that he had not committed the act that he had bought insurance against liability for committing.

But it is plain both that Great Northern had not insured Guaranty Bank against being sued for infringing an unregistered trademark and that Midwest Guaranty Bank was not claiming such an infringement. We do not put much weight on the failure of Midwest's complaint to mention "registered" trademark—the omission merely left the registration status of Midwest's trade name unspecified. What is critical is that the claim of trademark infringement was described in the complaint as a "common law" claim. (The complaint also charges unfair competition both under Michigan common law and under 15 U.S.C. § 1125(a), which, unlike 15 U.S.C. § 1114(1)(a), protects unregistered marks.) There is no such animal as a registered common law trademark. Dana Shilling, *Essentials of Trademark and Unfair Competition* 4 (2002); Richard Raysman et al., *Intellectual Property Licensing: Forms and Analysis* § 4.02[4], p. 4-10 (1999). If it is registered, it is registered pursuant to a statute, either the Lanham Act or a state statute. Michigan has a trademark registration statute, Mich. Comp. Laws §§ 422.34, 429.33, .35, .42, and it is not preempted by the Lanham Act because it does not limit federal rights. *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 41-42 (1st Cir. 2006); 3 *McCarthy on Trademarks and Unfair Competition* § 22:2, p. 22-3 (4th

ed. 2004). But Guaranty Bank did not sue under the statute, and so far as appears never registered its mark under any law.

Any doubts on this score are dispelled by the "civil cover sheet" that the district court in Michigan requires be filed with every complaint. Signed by the plaintiff's counsel, it describes the cause of action as "Defendant has recently adopted and begun using a name confusingly similar to the Plaintiff's," and adds, in a space that asks for the trademark number and date if it is a trademark suit, that "the MIDWEST GUARANTY MARK is not federally registered." It could not be state-registered either, because no number or date is given for the trademark.

The civil cover sheet is not technically part of the complaint, but it is filed at the same time and by the same firm that prepared the complaint, and when taken together with the allegation in the complaint of a violation only of a common law trademark conclusively establishes that the suit was not for infringement of a registered trademark and therefore did not allege an advertising injury even if the public announcement of Guaranty Bank's intention to enter Midwest Guaranty Bank's market was an advertisement within the meaning of Great Northern's policy; this cannot be determined from the complaint because the nature of the public announcement is not indicated.

AFFIRMED.